**Irv C. DEAL, Appellant,**

v.

**William C. MADISON et al., Appellees.**

**No. 19542.**

Court of Civil Appeals of Texas, Dallas.

Oct. 20, 1978.

Rehearing Denied Nov. 28, 1978.

Richard Bernays, Ben Admire, Touchstone, Bernays & Johnston, Dallas, for appellant.

R. Jack Ayres, Jr., Kelsoe & Ayres, Dallas, for appellees.

GUITTARD, Chief Justice.

In this suit for wrongful death, defendant claims deductions from the damages in the amount of the settlements paid by three other alleged tortfeasors. Since the total amount of the settlements was more than the damages found by the jury, allowance of the deductions would result in a judgment that plaintiff take nothing from defendants. The trial court denied the deductions and rendered judgment against defendant for the full amount of the damages. Defendant appeals, contending that he is entitled to the deductions under article 2212a(2)(d) of the Texas Revised Civil Statutes (Vernon Supp.1978), and also under the common-law rule stated in *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935) that a plaintiff is entitled to only one satisfaction of his damages. We agree with defendant's contentions. Consequently, we reverse the judgment of the trial court and render judgment that plaintiff take nothing.

### 1. Questions Presented

The first question presented is whether a defendant who has himself asserted a claim for indemnity or contribution against another alleged tortfeasor must have made a settlement of that claim before he is entitled to the deduction provided by subdivision 2(d). The second is whether a defendant, by actively pursuing claims for indemnity or contribution against the settlers, may dismiss his claims against those parties before submission to the jury and still rely on his previously pleaded claims for deductions under section 2(d). We hold that the defendant is entitled to the deductions although he had pursued his claims for indemnity and contribution and then dismissed such claims before submission to the jury without making any settlement.

### 2. Proceedings in This Case

The procedural posture of the case is unusual. Plaintiffs are the surviving husband and children of Betty Madison, who died in an apartment-house fire on December 6, 1973. In June 1974 they sued The Travelers Insurance Company, owner of the apartments at the time of the fire. In January 1975 Travelers was permitted to file a third-party claim against I. C. Deal, who owned the land at the time the apartments were built, and Jack Craycroft, the architect who designed them. In order to avoid a continuance of the main action, the trial court severed the third-party claim. After the severance, plaintiffs made a settlement with Travelers in the amount of $450,000. They signed an instrument releasing Travelers from any further liability arising from the death of Betty Madison and indemnifying Travelers against any claims by Deal and Craycroft, as well as others. This settlement agreement was approved by the court, which rendered a final judgment against Travelers in the main action. At the time of the settlement, plaintiffs signed another agreement providing for an assignment to Travelers of an interest in their claims against Deal and Craycroft so that the net amount of any recovery on those claims should be prorated two-thirds to

Travelers and one-third to plaintiffs until Travelers should receive the sum of $300,000. In this agreement, plaintiffs also promised to proceed within a reasonable time with prosecution of their claims against Deal and Craycroft, and Travelers agreed that its third-party action should be merged with the claims asserted by plaintiffs.

Pursuant to this agreement, plaintiffs intervened in the severed third-party action. The court permitted the intervention and redesignated the parties with the Madisons as plaintiffs and Deal and Craycroft as defendants. Deal filed an answer in which he alleged that plaintiffs had been fully compensated for their damages and that under article 2212a he was entitled to full credit for all previous settlements. Deal further alleged that the death of Betty Madison was proximately caused by the negligence of both Travelers and Craycroft, and prayed for judgment over against them for the full amount of any judgment recovered against him by plaintiffs. The same allegations are found in all of Deal's subsequent pleadings.

Meanwhile, in January 1976 Travelers had dismissed its claim for contribution or indemnity against Deal and Craycroft. Before the trial began on June 20, 1977, plaintiffs settled with Craycroft and dismissed their claim against him. In December 1976 plaintiffs had obtained leave to join as a defendant I. C. Deal Companies, Inc., a corporation to which Deal had transferred the apartment properties several years before the occurrence in question. Plaintiffs had amended their petition to add Deal Companies as a defendant, but then had settled with that corporation also and dismissed it before the present trial began. Accordingly, when the case went to trial June 20, 1977, the only active parties were plaintiffs and defendant Deal. Counsel for Travelers and Craycroft were present throughout the trial, but did not participate actively. The only claims for relief before the court were plaintiffs' claim for damages against Deal and Deal's third-party claims against Travelers and Craycroft, originally filed as counterclaims, praying for judg-ment over for the full amount of any recovery by plaintiffs against him.

After plaintiffs rested their case, defendant called Jack Craycroft as a witness, and at the conclusion of his testimony, took a nonsuit of defendant's claims against both Craycroft and Travelers. Although previously, at the judge's request, defendant's counsel had presented proposed special issues concerning the negligence of Travelers, Craycroft, and Deal Companies, he withdrew any request for such issues after the nonsuit. However, counsel for plaintiff did request these issues, and they were submitted over defendant's objection. The jury found that Betty Madison was free of negligence and that the negligence of the alleged tortfeasors contributed to plaintiffs' damages in the following percentages:

Craycroft—30%;

Deal Companies—5%;

Travelers—20%;

Deal—45%.

The amounts of plaintiffs' damages were found in sums aggregating $444,999. Plaintiffs moved for judgment against defendant Deal for the full amount of this verdict, and defendant moved for judgment in his favor on the ground that plaintiffs had already received settlements aggregating $585,000; $450,000 from Travelers, $130,000 from Craycroft and $5,000 from Deal Companies. The judge rendered judgment for plaintiffs, but recited a number of reasons for the judgment not raised in plaintiffs' motion or in any of the pleadings.

### 3. Legal Background of Article 2212a

■ The principal questions presented turn on the provisions of article 2212a with respect to the effect of a settlement by one or more tortfeasors on the liability of the remaining tortfeasors. In interpreting this statute, we must keep in view the old law, the evil, and the remedy. Tex.Rev.Civ.Stat. Ann. art. 10(6) (Vernon 1969). Statutes are to be construed in connection and in harmony with the existing law and as a part of a general and uniform system of jurisprudence. *McBride v. Clayton*, 140 Tex. 71, 166

S.W.2d 125, 128 (1942). Before enactment of article 2212a, the leading decisions on this subject were *Gattegno v. The Parisian*, 53 S.W.2d 1005 (Tex.Com.App.1932, holding approved); *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935); and *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1965).

In *Gattegno* the Commission of Appeals, in giving directions for a new trial, expressed its views on the effect of a release by one of two tortfeasors. Judge Critz, whose holdings were approved by the supreme court, said that if both the defendant and the settler were active tortfeasors, the release discharged at least half of the damages and if the consideration for the release should be more than half of the damages found on the second trial, plaintiff could in no event have a double recovery for the same wrong.

In *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703, 705 (1935), the supreme court again applied the principle that there can be but one satisfaction for a single wrong and held that a plaintiff who had received the full amount of his damages, as later found by the jury, in consideration of a covenant not to sue one tortfeasor, could recover nothing further from a second tortfeasor.

In *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1965), the plaintiff had given one of two tortfeasors a covenant not to sue, reciting as consideration a nominal amount, which was never paid. The supreme court held that by taking the covenant not to sue, the plaintiff had discharged one-half of her damages. After an extensive review of the authorities in Texas and other jurisdictions, the court chose to follow the statement of that principle by Judge Critz in *Gattegno*, and also the reasoning of Professor Hodges in *Contribution and Indemnity Among Tortfeasors*, 26 Texas L.Rev. 150, 171–72 (1947). Justice Greenhill, writing for the supreme court, explained the basis for the decision as follows:

> The rule expressed in the *Gattegno* case and explained in Professor Hodges' article would allow the plaintiff to recover only one-half of the damages found by the jury. This rule would give the settlement finality because the non-settling defendant would have no right of contribution since he is not required to pay more than half of the judgment. Circuity of action would be avoided because the settling tortfeasor would have no occasion to sue the plaintiff to recoup his loss.

386 S.W.2d 767, 768.

These decisions had established the substantive law concerning the effect of settlement by less than all tortfeasors before comparative negligence was introduced by article 2212a in 1973. Payment by each settling tortfeasor reduced proportionately the damages for which the remaining tortfeasor was liable, and since the claimant was entitled to but one satisfaction of his damages, the remaining tortfeasor was entitled to have the aggregate amount of the settlements credited on the damages, so that recovery was limited in any event to the excess of the damages as found by court or jury over the amount of the settlements, and if the damages were found to be no more than the amount already received, no further recovery was permitted. Hodges, *Contribution and Indemnity Among Tortfeasors*, 26 Texas L.Rev. 150, 171–72 (1947).

The procedural consequences of such a settlement, however, were not so well defined. The courts had never faced and decided the question of whether in order to claim a proportionate reduction of damages the defendant must pursue a claim for contribution against the released tortfeasor or whether it was sufficient to plead the release as a partial defense to the plaintiff's claim. Cautious defense counsel followed the practice of filing third-party claims against the settling tortfeasors, but such a recovery was rarely, if ever, awarded. In *Gattegno*, Judge Critz said that the defendant had the right to retain the other tortfeasor in the suit in order to enforce the defendant's right of contribution under article 2212, Texas Revised Civil Statutes (1925), but he noted that this part of the opinion did not take into consideration the release from plaintiff to the other tort-

feasor. In commenting on the release, he was careful to say that the questions discussed had not actually been raised by the parties, and he expressed no opinion on whether the trial court's instructed verdict in favor of the released tortfeasor could be justified on the theory that the release also discharged any claim for contribution.

The clear implication of *Palestine Contractors*, as we understand that opinion, is that the defendant need not pursue a claim against the released tortfeasor in order to have a proportionate reduction of the damages. This implication follows from the court's holding that in order to give finality to the settlement and avoid circuity of action, settlement by one tortfeasor discharges a proportionate part of the claim, so that the remaining tortfeasor is never required to pay more than his proportionate part of the damages. Unless he pays more than his proportionate part, said the court, he has no right of contribution under article 2212. Accordingly, in the *Palestine Contractors* case, the court rendered judgment against the defendant for only half the damages found by the jury and denied any recovery for contribution against the released tortfeasor. The opinion lays some emphasis on the fact that the defendant had pursued his claim for contribution against the released tortfeasor, but apparently the court's concern in that respect was that the defendant had by that means pleaded his right to contribution as a basis for his entitlement to a proportionate reduction of the damages.

Sufficiency of a defensive pleading without a third-party claim is supported by *Panhandle Gravel Co. v. Wilson*, 248 S.W.2d 779, 785 (Tex.Civ.App.—Amarillo 1952, writ ref'd n. r. e.) in which the defendant had a contractual claim for indemnity against the settling tortfeasors, who had taken a covenant not to sue and an indemnity agreement from the plaintiff. The court held that the settlement could be pleaded as a release of the plaintiff's claim, thus obviating any recovery by the defendant on its indemnity claim against the settlers, who, in turn, would then have the right to recover the same amount from the plaintiff. A claim for contribution against a settling tortfeasor would differ only in that the release would be partial rather than total.

An opinion in which a defendant's failure to claim contribution against the released tortfeasor was discussed as a matter affecting his claim for proportionate reduction is *Petco v. Plummer*, 392 S.W.2d 163 (Tex.Civ. App.—Dallas 1965, writ ref'd n. r. e.). The principal holding in the case was that in order to obtain a proportionate reduction of damages resulting from an explosion, the defendant had the burden to establish that the released parties were actually tortfeasors, that is, that their negligence had proximately caused the explosion. In support of its holding that the released parties in that case were not shown to be tortfeasors, the court observed that no one was alleging that they had negligently caused the explosion, that the defendant had not seen fit to bring them back into the suit, had sought no contribution from them, and had obtained no finding that either of them was guilty of negligence proximately causing the explosion. We do not interpret this opinion as holding that a third person who has bought his peace must actually be made a party to the suit before his negligence can be determined for the purpose of a proportionate reduction of the damages.

■ Notwithstanding the clear implication of *Palestine Contractors* that settlement by one of several tortfeasors operated as a proportionate discharge of the damages so as to give such a settlement finality by obviating any claims for contribution, the practice continued of filing and pursuing third-party claims against parties who had settled. Apparently, there was confusion as to whether the negligence of a settling party could be determined in a suit to which he was not a party. Of course, no finding of negligence can bind an absent party, but if the purpose of the finding is not to bind him, but rather to determine the extent of liability of defendants remaining in the suit, joinder of such an absent party is entirely unnecessary. Dean Keeton has pointed out that failure to join an alleged

settling tortfeasor should not preclude submission of issues concerning the existence and amount of his negligence because that determination is in no way dependent on his being a party except for procedural or tactical reasons on the part of claimants or defendants. Keeton, *Annual Survey of Texas Law: Torts*, 28 Sw.L.J. 1, 14 (1974). Bringing in a third party against whom no relief can be granted in order to determine what relief should be granted as between the original parties is an empty formalism. Logically, the claim of proportionate reduction of damages can be raised by a defensive plea to the effect that a third person, whose negligence had proximately caused the damages, had made a settlement by which a proportionate part of the damages were discharged. Yet cautious defense counsel have not been content with this approach. Consequently, the extraordinary practice has persisted of filing third-party claims against parties who had settled, even though, under *Palestine Contractors*, no recovery could be awarded against them. These parties, because of their total freedom from further liability, have rarely played an active part in the litigation. Their presence has served only to present problems to trial judges with respect to rights to peremptory challenges and cross-examination of ostensibly adverse witnesses, and to confuse juries with respect to the true interests of the parties before them, since these parties, though apparently in the position of defendants, often have made provisions in their settlement agreements which aligned their interests with the plaintiffs, as Travelers has done in the present case.

Thus, before article 2212a was adopted in 1973, some confusion existed as to whether a third-party claim for contribution, as distinguished from a defensive pleading of proportionate release of damages, was necessary to invoke the proportionate reduction rule, although the opinion in *Palestine Contractors* seemed to imply that no third-party claim was necessary. Also, the pre-1973 decisions provide no direct guidance as to whether the remaining defendant was required to elect between proportionate re-

duction of damages under *Palestine Contractors* and credits for the amount of the settlements under *Bradshaw* before the verdict was returned. Of course, the defendant had the burden to plead and prove the facts bringing the case within either rule, but there was no factual inconsistency between the two pleas. So far as our examination of the authorities shows, the defendant could plead both under rule 48, Texas Rules of Civil Procedure, which allows alternative pleas, and then, after the verdict had settled questions of fault and amount of damages, the court would apply whichever rule was appropriate.

### 4. *Construction of Article 2212a*

In the light of this background, the legislative intent in adopting article 2212a is reasonably clear. The evil to be remedied was the common-law rule that contributory negligence is a complete bar to actions based on negligence. The remedy adopted was to enact the rule of modified comparative negligence. This result is accomplished by section 1, which occasions no controversy here. Section 2 deals with the liabilities of several tortfeasors. The evident purpose of this section is to apply the scheme of comparative negligence so as to require contribution from each defendant in proportion to the negligence attributable to him, rather than to require an equal contribution from each tortfeasor, as formerly required by article 2212, but still to permit the injured party only one satisfaction of his damages. When there has been no settlement, this result is accomplished by subdivisions (b) and (c). When one or more of the alleged tortfeasors has settled with the claimant, the rights and obligations of the remaining defendants are provided by subdivisions (d) and (e), which provide:

> (d) If an alleged joint tort-feasor pays an amount to a claimant in settlement, but is never joined as a party defendant, or having been joined, is dismissed or nonsuited after settlement with the claimant (for which reason the existence and amount of his negligence are not submitted to the jury), each defendant is

entitled to deduct from the amount for which he is liable to the claimant a percentage of the amount of the settlement based on the relationship the defendant's own negligence bears to the total negligence of all defendants.

(e) If an alleged joint tort-feasor makes a settlement with a claimant but nevertheless is joined as a party defendant at the time of the submission of the case to the jury (so that the existence and amount of his negligence are submitted to the jury) and his percentage of negligence is found by the jury, the settlement is a complete release of the portion of the judgment attributable to the percentage of negligence found on the part of that joint tort-feasor.

These provisions are reasonably clear in their substantive provisions, but the procedural uncertainties existing under the former law are not resolved. No provision in the statute purports to change the underlying rule of *Bradshaw* that a claimant can have but one satisfaction of his damages whether by settlement or by judgment. Under subdivision (d), each defendant is entitled to deduct from the amount for which he is liable to the claimant a percentage of the settlement based on the relationship of his own negligence to that of the other defendants. If only one defendant remains, he may deduct the entire amount of the settlement. In this respect, subdivision (d) is in accordance with the *Bradshaw* rule. Under subdivision (e), the defendant may claim reduction of the damages, based on the proportion of the negligence of the settling tortfeasor found by the jury, thus modifying the proportion allowed by *Palestine Contractors* in accordance with the scheme of comparative negligence. Plaintiffs recognize that under subdivision (e), although the settling tortfeasor is made a party, his liability is completely released

and the other defendants must pay only their own percentages, as stated in W. Fisher, J. Nugent, and C. Lewis, *Comparative Negligence: An Exercise in Applied Justice*, 5 St. Mary's L.J. 655, 665 (1973). Since this is true, there would be no occasion for a judgment for contribution against the settling tortfeasor, as *Palestine Contractors* implies.

It is not clear that the framers of this statute were concerned about any changes in procedure, but subdivisions (d) and (e) have procedural implications pertinent to the present case. Although the statute does not expressly so provide, it seems to assume that under pre-existing law the negligence of the settling tortfeasor could be determined only in a suit to which he is a party, even though, under *Palestine Contractors*, no judgment could be recovered against him. As Dean Keeton points out in his comments on these subdivisions, failure to join an alleged settling tortfeasor should not preclude submission of issues concerning the existence or amount of his negligence because that determination is in no way dependent on his being a party. The relevant distinction, says Keeton, is not between the settler's presence or absence in the suit, but rather between a settlement made with one who was legally liable and one who was not. Keeton, *Annual Survey of Texas Law: Torts*, 28 Sw.L.J. 1, 14 (1974).[1] Nevertheless, subdivision (d) explains parenthetically that if the settling tortfeasor is not joined or is dismissed, "the existence and amount of his negligence are not submitted to the jury," and subdivision (e) explains in a parallel parenthesis that the settling tortfeasor may be joined as a party defendant "so that the existence and amount of his negligence are submitted to the jury."

1. In the present case, plaintiffs seem to agree with Dean Keeton's position that the negligence of the settling tortfeasors can be determined without their presence in the suit. Although Travelers and Craycroft had been dismissed, plaintiffs obtained the submission of issues concerning their negligence. Plaintiffs contend that the court was required to submit issues concerning negligence of the dismissed parties in order to determine whether defendant's negligence was greater than that of the Madisons and that plaintiffs were entitled to damages in the full amount found by the jury in view of the findings that the Madisons were not negligent and that defendant's negligence contributed 45%.

The statute does not expressly provide that the existence and amount of the negligence of a settling tortfeasor cannot be submitted to the jury unless he is a party to the suit, but purports merely to describe the practice in that respect at the time the statute was enacted. We would be reluctant to hold that the legislature intended to require the formalistic joinder of a party who could not be affected by the judgment. Nevertheless, counsel for the defendant in such a case cannot safely assume that the defendant will have the benefit of the proportionate reduction under subdivision (e) unless he files a third-party claim against the settling tortfeasor. Neither can the defendant be safe in claiming the deduction for previous settlements provided by subdivision (d) unless he dismisses his third-party claim before the case is submitted to the jury. Consequently, the statute seems to preclude the option, which was apparently open before its enactment, of waiting until after verdict to decide whether to claim the deduction or the proportionate reduction. We need not decide this question in the present case, but the procedural implications of subdivisions (d) and (e) are pertinent in determining both of the principal questions in the case.

### 5. Applicability of Section 2(d)

In the light of this analysis, we must decide whether subdivision (d) of section 2 is applicable to the facts of this case. The first question is whether a defendant who has made a third-party claim for indemnity or contribution against the settling tortfeasor can dismiss that claim without receiving any money in settlement and claim the deduction provided by subdivision (d). Defendant Deal contends that when he dismissed his third-party action against Travelers and the other settling parties, he brought the case within subdivision (d) because these parties were "dismissed or nonsuited after settlement with the claimant," within the terms of that subdivision. Consequently, he argues that their negligence should not have been submitted to the jury and that he was entitled to deduct from the amount of plaintiff's damage as found by the jury a percentage of the aggregate amount of the three settlements "based on the relationship the defendant's own negligence bears to the total negligence of all defendants." Since Deal is the only remaining defendant, his negligence would be 100% of the "total negligence of all defendants." Thus, Deal insists, since the damages found by the jury were less than the aggregate amount of the settlements (and, indeed, less than the amount of the Travelers settlement alone), the plaintiffs have already received more than full satisfaction of their damages and should recover nothing further from him.

Plaintiffs, on the other hand, assert that defendant has waived his right to proportionate reduction of the damages under subdivision (e) by dismissing his third-party claims against Travelers and the other settling parties, and has not brought himself within subdivision (d) because defendant has not himself settled with any of the dismissed parties. Consequently, plaintiffs contend that defendant is liable for the full amount of plaintiff's damages as found by the jury, notwithstanding the settlements already received by plaintiff. In support of this contention, plaintiffs argue that defendant was himself a "claimant" insofar as his now dismissed third-party claims were concerned, since subdivision (a) defines "claimant" as "any party seeking relief, whether he is a plaintiff, counterclaimant, or cross-claimant." Plaintiffs interpret the expression "the claimant" in subdivision (d) to refer to defendant as a third-party claimant, and assert that since defendant made no settlement with the third-party defendants when they were dismissed, the case falls within subdivision (c), which applies between joint tortfeasors in the absence of settlement, and since defendant nonsuited the other tortfeasors, he must pay the full amount of the damages found by the jury. Although admitting that this result would be harsh, in that it would permit plaintiffs to recover damages for which they have already been compensated, plaintiffs insist that defendant brought it on himself by his tactics at the trial.

■ We do not agree that the defendant has been guilty of conduct justifying such a heavy penalty. Neither do we agree that "the claimant" in subdivision (d) necessarily refers only to defendant as a third-party claimant. A more reasonable construction of "the claimant" is that it refers back to the same "claimant" mentioned earlier in the same sentence: "If an alleged joint tort-feasor pays an amount to a *claimant* in settlement but . . . is dismissed or nonsuited after settlement with *the claimant,* . . . each defendant is entitled to deduct . . .", etc. (emphasis added). Of course, "a claimant" would include the plaintiff as well as a third-party plaintiff. We find no language in the statute indicating that a defendant, after having made a claim against a settling tortfeasor for contribution or indemnity, must himself receive money in settlement from the settling tortfeasor in order to assert that the plaintiff has already received from that tortfeasor a full or partial settlement of his claim, and no authority cited to us supports such a view. Such an interpretation would be contrary to the purpose of the statute to provide an equitable scheme of contribution between tortfeasors based on comparative negligence and still permit the plaintiff only one satisfaction of his damages.

Moreover, plaintiffs' interpretation of the statute as denying the deduction provided by subdivision (d) to a defendant who has dismissed an unsuccessful third-party claim is so illogical and unreasonable that we cannot attribute it to the legislature in the absence of express language leaving no room for interpretation. We find no such explicit language in this statute. Under subdivision (e), the remaining defendant may pursue his claim for contribution against the settling tortfeasor in order to obtain a proportionate reduction of the damages, but a tortfeasor who has settled with the original claimant has no liability for contribution to other tortfeasors and no inducement to pay out any more money in settlement because, under *Palestine Contractors,* in order to avoid circuity of action and give finality to the settlement, the plaintiff's claim is simply discharged to the extent of the contribution that would otherwise be recovered from the settling tortfeasor. Consequently, if plaintiff's interpretation is accepted, the remaining defendant, who has made a claim for indemnity or contribution against the settling tortfeasor, whether by pleading or otherwise, but is unable to obtain anything in settlement of such a claim, has, in effect, precluded any claim for deduction under subdivision (d), and has limited himself to a claim for proportionate reduction of the damages under subdivision (e), although the result may be to allow the plaintiff to recover, by settlement and judgment, more than the amount of his damages as found by court or jury. Under plaintiffs' interpretation, if the defendant then attempts to proceed under subdivision (d), rather than subdivision (e), he can get no relief under either subdivision, and the plaintiff may recover from the defendant the entire amount of the damages found by court or jury, even though the plaintiff has already received more than that amount from the settling tortfeasor. No principle of logic, policy, or statutory interpretation supports such a result. A defendant's unsuccessful claim for indemnity or contribution does not prejudice the plaintiff's claim against him and should have no effect on the ultimate recovery. A defendant who has made such a claim without success should be in no better or worse position with respect to the plaintiff than if he had made no such claim. This view is consistent with the language of the statute when the words "the claimant" in subdivision (d) are interpreted, in accordance with their evident intent, as referring to the claimant with whom the dismissed tortfeasor has settled, whether the original plaintiff or the claimant in a third-party action. Normally, they would refer to the original plaintiff, since such third-party actions are rarely, if ever, settled without a concurrent settlement of the main claim.

■ This interpretation is in accordance with the pre-existing common-law rule applied in *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (1935), that a plain-

tiff is entitled to but one satisfaction of his damages, and, therefore, a non-settling tortfeasor is entitled to deduct any amount paid in settlement from the amount of damages found by the jury. Plaintiffs argue that article 2212a changes the *Bradshaw* rule and places the burden strictly on the non-settling tortfeasor to bring the case either within subdivision (d) or subdivision (e) in order to obtain the benefit of any settlement with other alleged tortfeasors. Although we recognize that subdivision (2)(h) of article 2212a repeals all previous conflicting laws, we find no conflict with *Bradshaw*, since we find no indication of an intent to permit more than one satisfaction of the plaintiff's damages.[2] Rather, we interpret subdivision (d) as giving full effect to the *Bradshaw* rule in the context of comparative negligence, so that the remaining defendants are permitted to share the credit for the settlement in proportion to their respective percentages of negligence, and, therefore, in proportion to their respective liabilities. If only one defendant remains, then, under subdivision (d), he may claim the entire credit for the settlements.

■ The *Bradshaw* rule has been expressly reaffirmed by the supreme court since the enactment of article 2212a. In *T. L. James & Company, Inc. v. Statham,* 558 S.W.2d 865, 869 (Tex.1977), the court held that although article 2212a does not apply to payment of a judgment as distinguished from a voluntary settlement, nevertheless, in no event will the claimant be allowed more than the amount required for full satisfaction of his damages. Under that decision, even if plaintiffs were correct in their contention that neither subdivision (d) nor subdivision (e) applies, the *Bradshaw* rule would still effectively preclude plaintiffs from recovering from defendant more than the amount required for full satisfaction of their damages. We construe subdivision (d), however, as consistent with the *Bradshaw* rule and as meaning that the remaining defendant may claim deductions

under that subdivision whether or not he has asserted a claim for contribution under subdivision (e), and, if he has asserted a claim for contribution, without having made any settlement. Consequently, we cannot sustain the trial court's denial of the claimed deductions on this ground.

### 6. Estoppel to Claim Deductions

The record indicates that the trial court did not rest the judgment on plaintiffs' interpretation of article 2212a. Rather, the judge denied defendant's claim of deductions on an estoppel theory recited in the judgment, but not pleaded by plaintiffs and not alleged in their motion for judgment. This estoppel, according to the judge's recitals, resulted from defendant's ostensible pursuit of his third-party claims against Travelers and Craycroft during a substantial portion of the trial and then his dismissal of those claims without compensation or settlement. The judgment recites that by such action defendant is "judicially and equitably estopped to assert and/or claim any right or benefit at common law or under article 2212a for credit, contribution, or indemnity," and that his claims for such credit, contribution or indemnity were "waived, released and discharged" by his voluntary action in taking a non suit as to Travelers and Craycroft.

■ We have difficulty in determining the exact theory on which the trial judge ruled that defendant's pursuit of his third-party claims barred him from asserting his claim of deductions under subdivision (d). Nothing in the record supports a judgment on the theory of waiver, release, or discharge. The apparent ground of the judge's holding was that defendant made a major change in his position when he dismissed his third-party claims. The judge held, in effect, that defendant was estopped to claim deductions under subdivision (d) because of his pursuit of the inconsistent

---

**2.** We express no opinion on the question of whether the *Bradshaw* rule applies if the defendant seeks a proportionate reduction under subdivision (e) rather than a deduction under

subdivision (d), and fails to obtain a reduction that would be as much as the amount already received in settlement.

remedy of third-party claims against Travelers and Craycroft for indemnity and contribution. If such remedies or defenses were inconsistent, to hold that defendant had made a binding choice between them would be to invoke the doctrine of election. *Custom Leasing, Inc. v. Texas Bank & Trust Company of Dallas,* 491 S.W.2d 869, 871 (Tex.1973). Election of remedies is an application of the doctrine of estoppel. *Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377, 393 (1945). Strictly speaking, however, it is not a judicial estoppel, which occurs only when a party has previously stated under oath in a judicial proceeding facts inconsistent with his present position. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956). Pleadings not under oath do not result in judicial estoppel. *Aetna Life Insurance Co. v. Wells,* 557 S.W.2d 144, 147 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.). No judicial estoppel is shown here because the judgment does not recite, and plaintiffs do not contend, that defendant made any statement under oath contrary to the facts on which his claim for deductions depends. Consequently, we shall confine our consideration to the question of estoppel by election of remedies.

■ We conclude that the court erred in applying the doctrine of estoppel to this case for at least three reasons. First, defendant had the right to pursue his claim of deductions under subdivision (d) and his third-party claims for indemnity as alternative remedies, and was not required by article 2212a to elect between them, at least until submission of the case to the jury. Second, the record affirmatively shows that plaintiffs were not adversely affected by defendant's pursuit of his third-party claims. Third, the estoppel theory was not raised by plaintiffs' pleading or by their motion for judgment in the trial court.

*a. Election Between Alternative Defenses*

■ Election of remedies has been called a harsh doctrine. Consequently, it is not a favorite of equity, and its scope should not be extended. *American Savings and Loan Association of Houston v. Musick,* 531 S.W.2d 581, 588 (Tex.1976). It is used to prevent rather than permit double redress for a single wrong. *Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377, 393 (1945). The following statement of the rule from 10 Ruling Case Law, 703, 704, has been adopted by the supreme court:

> If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit and prosecutes it to final judgment, or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy.

*Seamans Oil Co. v. Guy,* 115 Tex. 93, 276 S.W. 424, 426 (1925). More recently, the supreme court has again quoted this statement from Ruling Case Law with approval. *Lomas and Nettleton Company v. Huckabee,* 558 S.W.2d 863, 864 (Tex.1977).

■ Under the rule as stated, pursuit of inconsistent remedies, without more, is not enough to invoke application of the doctrine of election. Our liberal system of pleading allows a party to state his claims or defenses alternatively or hypothetically and to state as many claims as he has, regardless of consistency. Rule 48, Tex.R. Civ.Proc.; *McKenzie v. Carte,* 385 S.W.2d 520, 526 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). No magic words are required for an alternative plea, and if the apparent intent is to assert an alternative claim or defense, it will be given that effect. *Rhoades v. Meyer,* 418 S.W.2d 300, 302 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.). If a party pleads more than one theory of recovery or defense, normally he need not elect between them until after verdict. *Commercial Music Company v. Klag,* 288 S.W.2d 168, 170 (Tex.Civ.App.—San Antonio 1956, no writ). He is entitled to the greatest relief under either theory that the verdict will support. *Hargrove v. Trinity Universal Ins. Co.,* 152 Tex. 243, 256 S.W.2d 73, 75 (1953); *Mowery v. Fantastic Homes, Inc.,* 568 S.W.2d 171 (Tex.Civ.App.—Dallas 1978, writ pending).

Although most of the cases cited concerned election of remedies by plaintiffs, rather than election between defenses, the same principles apply, since defendants, as well as plaintiffs, are permitted to plead alternatively by rule 48. If the defendant relies on reduction of his own liability because of the plaintiff's settlement with another tortfeasor, the defendant has a choice of defenses. He may claim a deduction under subdivision (d), a proportionate reduction of the damages under subdivision (e), or a right to full indemnity against the settler, which may afford a complete defense under common-law principles. The factual allegations raising these defenses may not be inconsistent, but the defenses are alternative in the sense that after the verdict is returned, judgment can be based on only one. The defendant, under the authorities cited, should be able to assert all three defenses until verdict, and thus to elect the defense most favorable to him, unless the statute precludes him from doing so or unless in doing so he has gained some advantage that would affect the plaintiff adversely. This possible adverse effect is a problem we shall discuss later.

We consider first whether article 2212a requires an election before trial between deduction from the damages under subdivision (d) and proportionate reduction of damages under subdivision (e). Although the statute does not expressly mention claims for indemnity, and we are not sure that it applies to them, we shall assume that they are governed by the same procedural considerations as claims for contribution (or proportionate reduction) under subdivision (e), since the third-party claims for indemnity, based on allegations of negligence of the third-party defendants, would probably be sufficient to support the lesser claim for contribution. *See Gulf, Colorado & Santa Fe Railway Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963) (allegation of sole proximate cause held to support claim of contribution against joint tortfeasor, based on proximate cause).

Accordingly, we must determine whether article 2212a requires the defendant to make an election before trial between claiming deductions under subdivision (d) and a proportionate reduction under subdivision (e). We conclude that it does not require such an election at that time. As we have mentioned in our discussion of the statute in the light of preexisting law, these subdivisions contemplate that if the settling tortfeasor is not a party to the suit *at the time issues are submitted to the jury*, the defendant may claim the deductions provided by subdivision (d), and that if the settler is a party to the suit and issues concerning his negligence are submitted to the jury, the defendant may claim a proportionate reduction of the damages under subdivision (e). Thus, if the statute requires the defendant to choose between these two defenses, he must do so before submission to the jury. There is no indication in the statute, however, that he must make the choice earlier. The two defenses are not inconsistent in the sense of being based on contradictory factual allegations. The facts that will ultimately determine which will be more advantageous to the defendant are the amount of the damages and the amount of negligence attributable to the settling tortfeasor, neither of which can be determined until the verdict is in. If the amount of damages found by the jury is high as compared to the amount of the settlement or the percentage of negligence of the settler is great, then the defendant is better off if he has pursued his third-party claim and is seeking a proportionate reduction of damages under subdivision (e). On the other hand, if the amount of damages found by the jury is low as compared with the amount of the settlement or the percentage of negligence of the settler is small, then the defendant is better off if he has dismissed his third-party claim and is seeking the deduction provided by subdivision (d). The defendant's choice between these defenses will depend on his prediction of the probable verdict, and if his evaluation of the case is erroneous, the mistake will be costly.

Faced with these contingencies, cautious defense counsel normally seek to delay that choice as long as possible so that he can

make a better evaluation of the various factors to be considered in his complex calculation—the jury, the plaintiff's evidence, his own evidence, and any evidence of other alleged tortfeasors still before the court. We see no basis in logic or in the language of the statute for requiring the defendant to make that choice before the trial begins. So long as he has properly pleaded the defense on which he ultimately relies, as defendant did here, the plaintiff has no reason to assert surprise. Since article 2212a seems to require the defendant to pursue a claim against the settling tortfeasor in order to claim the proportionate reduction of damages provided by subdivision (e), if the defendant asserts such a claim as an alternative to claiming a deduction under subdivision (d) and delays his decision to dismiss it until his last opportunity to do so, the court cannot properly assume that the third-party claim has been asserted in bad faith for the purpose of obtaining some improper advantage at the trial. The prosecution of a claim against a party who has made a settlement releasing him from further liability is necessarily something of a charade. The defendant cannot be faulted for attempting to comply with a statute which seems to require him to follow that procedure in order to keep open his option of claiming a proportionate reduction of the damages, however illogical such a requirement may be.

Accordingly, we construe subdivisions (d) and (e) of article 2212a as not requiring the defendant to elect between claiming the deductions allowed by subdivision (d) and the proportionate reduction of damages provided by subdivision (e) before submission of the case to the jury. If the defendant is not thus required to elect between subdivision (d) and (e), then neither is he required to elect between subdivision (d) and a claim of indemnity against the settling tortfeasor. Consequently, in this case, we hold that defendant's delay until late in this trial to dismiss his third-party action does not estop him to claim the deduction provided by subdivision (d), unless in pursuing his third-party claim he gained some advantage which adversely affected the plaintiffs' claim. To that question we now turn our attention.

*b. Adverse Effect on Plaintiffs' Claim*

■ We find no support in this record for the view, apparently adopted by the trial court, that defendant obtained an advantage from pursuing his alternative claims of indemnity that adversely affected plaintiffs. The trial judge recited in the judgment a number of actions by defendant's counsel as a basis for his holding of estoppel. As we read these recitals, they state three principal grounds. First the court mentions defendant's statements on voir dire charging negligence on the part of the third-party defendants. Obviously, whether or not a defendant is entitled to submission of jury issues concerning the negligence of another alleged tortfeasor, he is entitled to assert that the plaintiff's injury was the result of negligence of a third person rather than himself, whether or not that person is a party to the suit. The defendant is not restricted to a simple denial of his own negligence in his voir dire or at any other time during the trial. Allegations of sole proximate cause and new and independent cause have long served the purpose of directing the jury's attention to the defendant's contention of wrongdoing by persons not joined in the suit as a circumstance tending to rebut the allegation of defendant's negligence. Our examination of the present record fails to show that defendant made any charge of negligence against Travelers or Craycroft that he would not have been entitled to make in a simple effort to exculpate himself of primary negligence.

■ The second principal ground of estoppel mentioned by the court is that defendant had the advantage of peremptory challenges by the third-party defendants, who were ostensibly adverse to him. Thus, plaintiffs argue on this appeal that the third-party defendants had the same interest as defendant to strike members of the panel who appeared to be favorable to the plaintiff. We find no substance in this contention. The record shows that counsel

for Travelers and Craycroft were present during the voir dire, but that they made no statements to the panel and asked no questions. If they were permitted to exercise any challenges, they need not have been in view of article 2151a, Texas Revised Civil Statutes (Vernon Supp.1978), which authorizes the judge to equalize the challenges so that no party is given an unequal advantage. This equalization should not be based solely on pleadings, but should be made after determining the interests of the parties by information disclosed from pretrial procedures. *Perkins v. Freeman,* 518 S.W.2d 532, 534 (Tex.1974). Unquestionably, the settlements with Travelers and Craycroft were known to all parties and the judge before the trial began. Consequently, it was obvious that the third-party defendants had no interest in the lawsuit because no judgment could have been rendered against them. *See* W. Fisher, J. Nugent, and C. Lewis, *Comparative Negligence: An Exercise in Applied Justice,* 5 St. Mary's L.J. 655, 665 (1973). They were formal parties, joined only for the purpose of giving effect to the defendant's right of contribution or indemnity on the assumption that their joinder was necessary for that purpose. Under *Palestine Contractors,* 386 S.W.2d 764 (Tex.1965), any contribution awarded would not have resulted in judgment against them because, to avoid circuity of action and in order to give their settlements finality, it would merely have been deducted from any judgment plaintiffs recovered from defendant. The same principle would apply to defendants' claim for indemnity, since that claim, if successful, would also constitute a defense to plaintiffs' claim rather than ground for a judgment over against Travelers and Craycroft, who had the right of indemnity against plaintiffs under the terms of their settlement agreements. *Panhandle Gravel Co. v. Wilson,* 248 S.W.2d 779, 785 (Tex.Civ.App.—Amarillo 1952, writ ref'd n. r. e.). Consequently, neither Travelers nor Craycroft was entitled to any challenges, and if plaintiffs had considered themselves adversely affected by the court's action in allowing them, they would have had good grounds

for an objection. Since no such objection was made, it was waived, and plaintiffs have no standing now to assert that they were adversely affected by such challenges to such an extent that defendant should be estopped from claiming deductions under subdivision (d).

Moreover, there is no indication in this record that the challenges exercised by Travelers and Craycroft were exercised in a manner prejudicial to plaintiffs. Apart from the fact that no judgment could have been rendered against either of the third-party defendants, the record shows that the interest of Travelers was identical with that of plaintiffs, since under its settlement agreement with them, it was entitled to two out of every three dollars recovered from defendant until Travelers received as much as $300,000. If any party was adversely affected by the exercise of peremptory challenges by Travelers, it was defendant rather than plaintiffs. *See Council v. Bankers Commercial Life Ins. Co.,* 558 S.W.2d 487, 489 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.) (error to allow challenges to a defendant whose interest was aligned with plaintiff).

The third alleged advantage which the judgment recites is that defendant gained the opportunity to cross-examine ostensibly adverse witnesses, particularly Craycroft, and to obtain the admission of evidence against Travelers and Craycroft which would not have been admissible against plaintiffs alone. This ground, likewise, is without substance. Since, for the reasons stated, Craycroft was only a nominal party after he had settled with plaintiffs and plaintiffs had agreed to indemnify him against liability to defendant, defendant's counsel may not have been entitled to cross-examine him as an adverse witness, and if counsel had done so in a prejudicial manner, plaintiffs would have been entitled to object. The court would then have had discretion to determine whether Craycroft was actually a hostile witness, subject to cross-examination by leading questions. The court has wide discretion in such matters and could easily have protected plaintiffs

from any unfair tactics in this respect. Moreover, our review of Craycroft's testimony fails to show that plaintiffs were adversely affected by the cross-examination of Craycroft. So far as we can discover, no prejudicial leading questions were asked, and no impeachment was attempted. In fact, the examination proceeded as if Craycroft were not a party to the suit.

Neither does the record reveal that plaintiffs were adversely affected by testimony that was admitted as against the third-party defendants, but not as against plaintiffs. The only occasion upon which the admissibility of testimony was restricted was when defendant's counsel asked Craycroft whose idea it was to build a three-story, rather than a two-story apartment building. On plaintiffs' objection that the question was irrelevant, the court admitted it as against Craycroft, but instructed the jury not to consider it as between plaintiffs and defendant. Craycroft then testified, "I am ninety-nine percent [sic] that it was my idea." The court might properly have overruled the objection on the ground that the question was relevant to the issue of defendant's negligence, although it would not have been conclusive. In this respect, it would have been admissible, even if Craycroft had not been a party. We see no improper advantage here that would support the court's finding of estoppel. The record affirmatively shows that no harm resulted to plaintiffs from this testimony, since it bore on negligence, rather than damages, and the jury found the greatest percentage of negligence against defendant. Even if this testimony had been excluded and, as a consequence, the jury had found a higher percentage of negligence against defendant, such a finding could not have affected the judgment, since no negligence was found on the part of the Madisons. Moreover, this testimony was not of such a prejudicial or inflammatory nature as to suggest that the jury was unable to follow the court's instruction that it should not be considered with respect to plaintiffs' claim against defendant. Since, as we have held, defendant had the right to pursue his third-party claims against Craycroft as an alternative to his claim for deductions un-der subdivision (d), at least until submission of the case to the jury, testimony elicited in support of third-party claims cannot be taken as a ground of estoppel justifying forfeiture of his pleaded defense under subdivision (d) unless the adverse effect on plaintiffs was clear and substantial. No such adverse effect is shown by this record.

### c. No Pleading of Estoppel

Regardless of when defendant was required to elect, and without considering any adverse effect of defendant's pursuit of his third-party claims, this record shows another reason why the judgment cannot properly be based on estoppel. That doctrine was invoked by the trial judge on his own motion without any pleading or motion raising it, contrary to the well-established rule that estoppel must be specially pleaded. Indeed, estoppel is among the matters specifically required to be pleaded affirmatively by rule 94, Texas Rules of Civil Procedure. This requirement applies to estoppel of the defendant as well as of the plaintiff. *W. C. Bowman Lumber Co. v. Pierson*, 110 Tex. 543, 221 S.W. 930, 931 (1920); *Manning v. Sammons*, 418 S.W.2d 362, 365 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.). Election is a particular application of the doctrine of estoppel and must likewise be specially pleaded. *Redding v. Ferguson*, 501 S.W.2d 717, 720 (Tex. Civ.App.—Fort Worth 1973, writ ref'd n. r. e.); *Bradley v. Straus-Frank Company*, 414 S.W.2d 504, 509–510 (Tex.Civ.App.—Dallas 1967, no writ); *McKenzie v. Carte*, 385 S.W.2d 520, 526 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); *Betty v. Tuer*, 292 S.W. 271, 272 (Tex.Civ.App.—Beaumont 1927, no writ).

Plaintiffs argue that the trial court was justified in applying the doctrine of estoppel *sua sponte* because plaintiffs' counsel could not have known in advance that defendant would misrepresent his position at the trial, and, consequently, plaintiffs had no opportunity to raise the matter by pleading. We find no basis for this argument. Defendant had alleged his claims of deduction under subdivision (d) in every answer he had filed, including his trial pleading, and to the extent that claim was inconsist-

ent with his third-party claims, plaintiffs were on notice that he would have to elect between the two sooner or later. Thus, plaintiffs were in no position to assert surprise when defendant dismissed his third-party claims. Moreover, since rule 48 expressly permits inconsistent alternative pleas, counsel cannot justifiably be accused of misrepresenting his client's position if he attempts to develop both of them, even though he may ultimately be required to choose one or the other.

If there was any ground to suppose that defendant's pursuit of both alternatives would adversely affect plaintiffs, they could have raised the election question before voir dire of the jury panel or before the exercise of any peremptory challenges and asked the election be required then, since they were on notice by the alternative pleas in defendant's answer. If they had raised the question at that time, the trial court might have required defendant to elect, or might have protected plaintiffs in some other manner from any prejudice, such as by determining whether the third-party defendants had any adverse interests which entitled them to peremptory challenges. Thus, any adverse effect from defendant's pursuit of his alternative pleas could have been obviated without depriving defendant of his primary defense of deductions under subdivision (d). By failing to raise the issue of election or estoppel during the trial, plaintiffs waived any contention that defendant waited too long before making his election. In our opinion, the judge could not properly raise *sua sponte* an issue that plaintiffs themselves did not raise during the trial, and, indeed, failed to raise even after the verdict. Although the trial judge has broad discretion to control the trial and may expect candor from counsel, contested cases should be decided upon the issues made by the parties. The court cannot deprive a party of a primary claim or defense on the ground that an alternative claim or defense was not asserted in good faith. The primary claim or defense is precluded only if the alternative claim is pursued in such a manner as to constitute an election and the doctrine of election is properly pleaded. Consequently, we hold that the court could not properly invoke the doctrine of estoppel in this case.

*Conclusion*

After careful examination of this record, we can find no justification for awarding damages to plaintiffs after they have already been compensated for those damages in an amount greater than that found by the jury. In every pleading filed by defendant Deal, he has consistently maintained his position that any recovery against him should be reduced by the amount of those settlements. His pursuit of his alternative plea for indemnity until late in the trial provides no ground for estoppel against him. Neither have plaintiffs been adversely affected by defendant's pursuit of that alternative plea. Consequently, we hold that full effect must be given to the provision for deduction under subdivision (d), and also to the common-law rule, which has not been changed by article 2212a, that a plaintiff is not entitled to more than one satisfaction of his damages by settlement or by judgment.

Accordingly, the judgment of the trial court is reversed and judgment is rendered that plaintiffs take nothing from defendant I. C. Deal.