**GENERAL ELECTRIC COMPANY,**
**Appellant,**

v.

**Patricia SCHMAL, et al., Appellees.**

**No. 8849.**

Court of Appeals of Texas,
Texarkana.

Oct. 20, 1981.
Rehearing Denied Nov. 4, 1981.

E. Lawrence Merriman, Nichols, Merriman, Patterson & Allison, Longview, for appellant.

Blake C. Erskine, Erskine, Dunn & McMahon, Longview, Welby K. Parish, Gilmer, for appellees.

Harold Nix, Daingerfield, Guardian Ad Litem for Minors.

HUTCHINSON, Justice.

Appellees (plaintiffs), Patricia Schmal, individually and as next friend for her four minor children, Donald J. Schmal, Kurt James Schmal, Mark Richard Schmal and Jennifer Lynn Schmal, the surviving widow and children of Richard J. Schmal, brought this suit for damages for the death of Richard J. Schmal which occurred while he was working on a large piercing press for his

employer, the Lone Star Steel Company, in Morris County, Texas. The suit was brought against the appellant, General Electric Company (GE), and other parties, two of which were DeMag Meer Rohrtechnik Mannesmann-Meer, Mannesmann DeMag A G (DeMag), the manufacturer of the piercing press, and Fielding Plant Design, Ltd. (Fielding), the designer of the piercing press. GE filed actions for contribution and indemnity against both DeMag and Fielding.

The electronic control system for the piercing press, referred to as the "Logitrol", was supplied to DeMag by the defendant, GE.

On the day of his death, Mr. Schmal and other employees of Lone Star Steel Company had worked upon the piercing press and he was killed while they were checking out the machine to see if it was ready to be put back into regular operation.

Prior to trial plaintiffs settled the suit against DeMag and Fielding for the sum of $400,000.00 and dismissed that portion of the lawsuit. GE also dismissed its actions against DeMag and Fielding but maintained its pleadings asserting their liability. The other defendants were also dismissed and the case was tried with GE as the only defendant.

In response to special issues the jury found, among other things, that the Logitrol was defectively designed and that such defective design was a producing cause of the death of Mr. Schmal. The jury also found that the piercing press was in a defective condition unreasonably dangerous to the user by reason of a design defect when it left the hands of both DeMag and Fielding and that such defective condition was a producing cause of the occurrence.

The jury found the total damages for the plaintiffs to be $700,000.00. Judgment was entered for the plaintiffs for the sum of $300,000.00 plus the stipulated sum of $2,108.00 for funeral and burial expenses, and $1,650.00 for an attorney's fee for the guardian ad litem of the minor plaintiffs.

GE by its first two points of error contends that the trial court erred in entering judgment for the plaintiffs based upon the jury's answer to Special Issues Numbered 1 through 6 because the answers were supported by no evidence or factually insufficient evidence.

In response to these issues the jury found that (1) the Logitrol as applied to the piercing press was defectively designed, (2) the defective design was a producing cause of Mr. Schmal's death, (3) the Logitrol was furnished by GE without adequate warnings of the dangerous consequences of using it to operate the piercing press with safety interlocks overridden while using high ram forces and the press container out of position, (4) the furnishing of the Logitrol without warnings rendered it defective, (5) it was reasonably foreseeable by GE that safety interlocks might be overridden by users of the equipment in order to operate the piercing press using high ram forces with the press container out of position, and (6) furnishing the Logitrol without adequate warnings was a producing cause of the death of Mr. Schmal.

GE asserts in support of the two points that there was no testimony or evidence showing that the Logitrol system was being used at the time of the accident. A review of the record reveals ample evidence from which a jury could conclude that the Logitrol was in use at the time of the fatal accident. GE points one and two are without merit.

GE by its next four points of error submits that the trial court erred in allowing Mr. George Greene, Jr. and Dr. Phillip J. Charley to testify as expert witnesses contending that neither were qualified to give expert opinion testimony and that each testified as to ultimate fact issues based upon assumed facts which were not in evidence.

Mr. Greene attended Texas A & M University graduating in 1963 with a degree in mechanical engineering. While at the University he took courses in electrical engineering, including basic electricity, semiconductors and transistors and solid state circuitry. He served in the capacity of vice-

president over engineering for Stonebore, Incorporated, Houston, Texas, and was promoted to president of the company after one year. At the time of this trial he was the owner of Engineering Services International in Houston, Texas. He has taught courses and given lectures on product failures and product analysis to the Texas Society of Professional Engineers and is a member of the National Safety Council.

Dr. Charley is a registered mechanical, metallurgical and safety engineer. He, at the time of his testimony, was the president of Trusdale Laboratories in Los Angeles, California, and works as a consulting engineer primarily in the field of accident investigation and failure analysis.

Both Mr. Greene and Dr. Charley went to the Lone Star Steel plant and examined the equipment involved in the accident, the operation manual for the piercing press, the Logitrol manual, and various drawings and photographs.

The base for GE's objection to the testimony of these witnesses seems to be their lack of experience with the Logitrol system and in the case of Dr. Charley, his lack of experience with programmable controls.

■ It is well established in Texas that the qualification of an expert witness is left to the sound discretion of the trial court. *Columbia Engineering International, Ltd. v. Dorman,* 602 S.W.2d 72 (Tex.Civ.App.— Beaumont 1980, writ ref'd n. r. e.); *Air Shields, Inc. v. Spears,* 590 S.W.2d 574 (Tex. Civ.App.—Waco 1979, writ ref'd n. r. e.); *Simpson v. Glenn,* 537 S.W.2d 114 (Tex.Civ. App.—Amarillo 1976, writ ref'd n. r. e.). We believe that both Mr. Greene and Dr. Charley were properly qualified. While neither had previous experience with the Logitrol system, such would not prohibit their testimony. Of course, it could be considered by the jury in evaluating the evidence submitted by each of them.

GE's contention that the expert witnesses should not have been permitted to testify because their testimony was based upon assumed facts not in evidence is without merit. This contention is based upon the assertion previously made, that there was no evidence that the Logitrol system was in use when the accident occurred. We have concluded otherwise.

■ GE next asserts that the plaintiffs failed to sustain their burden of proof that the design of its product was defective as applied to the piercing press in question.

As stated the jury found that the GE Logitrol as applied to the piercing press was defectively designed. The jury was instructed that it could consider any or all of the following items in determining whether or not the Logitrol as applied to the piercing press was defectively designed and no others:

(a) in permitting safeties to be overridden at times when high ram forces were being used with the press container out of position;

(b) in failing to provide selective or limited overrides instead of a general override;

(c) in failing to provide additional safety interlocks which could not be overridden when the press container was out of position or high ram forces were being used;

(d) in failing to provide different or additional programs for the Logitrol which would not permit high ram forces to be used with the container out of position or would not permit the container to be out of position when high ram forces were being used.

GE in its brief states that the plaintiffs presented no evidence regarding the design of the Logitrol system as applied to the piercing press and certainly no evidence concerning their contentions that the design was defective or unreasonably dangerous, even if the testimony of Mr. Greene and Dr. Charley is accepted. Thus, this is in fact a no evidence point and this court must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901 (Tex. 1980); *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975).

Appellant cites the cases of *Henderson v. Ford Motor Company*, 519 S.W.2d 87 (Tex. 1974), and *Weakley v. Fischbach & Moore, Inc.*, 515 F.2d 1260 (5th Cir. 1975), to support its argument that the mere fact that a product could be designed better in some respect will not suffice as a predicate for a finding of an improper design. We agree with appellant that these cases correctly state the Texas law, but our review of the evidence in support of the jury findings here reveal more than a mere suggestion of a better design and contains testimony describing the unsafe features created by the defective design of the Logitrol. The record supports the jury's findings as to both a design defect and causation. Appellant's point of error is therefore overruled and such ruling also requires the overruling of the point of error asserting that GE as a matter of law had no duty to furnish warnings regarding the use of the product.

GE next contends that the trial court erred in refusing to submit to the jury its requested issues and instructions on misuse of the Logitrol by Mr. Schmal and the assumption of the risk by him. Prior to the submission of the case to the jury, GE submitted its requested jury instructions and special issues on misuse and assumption of risk to the court at the appropriate time and such instructions and issues were refused.

 For misuse to be a defense in a product liability case, it must be shown that such misuse was unforeseeable by the defendant. Misuse is rejected as a defense when the foreseeable use of the product is dangerous and the danger is a producing cause of injury to a user who has not himself made an unforeseeable use of the product. *General Motors Corporation v. Hopkins*, 548 S.W.2d 344 (Tex.1977); *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, no writ).

 Assumption of risk is also recognized as a defense in a product liability action. The basic elements of the defense are established if the plaintiff knew and fully appreciated the nature and extent of the danger-ous condition and then voluntarily encountered the danger or risk by means of a free and intelligent choice. *Henderson v. Ford Motor Company*, supra; *McAdams v. Pak-Mar Mfg. Co.*, 602 S.W.2d 374 (Tex.Civ.App.—Waco 1980, writ ref'd n. r. e.).

 It is well established that the right of a defendant to have affirmative defenses submitted must not be determined from a viewpoint of conditions as they appear after the verdict is returned, but rather from the perspective of what the jury might have found from the evidence if the issue had been submitted. *Whitfill v. Hunt*, 387 S.W.2d 653 (Tex.1965); *Blanton v. E. & L. Transport Co.*, 146 Tex. 377, 207 S.W.2d 368 (1948). When an issue is raised by the evidence and properly requested, the error in refusing to submit it is not cured or rendered harmless by findings of the jury on other issues that were submitted which have the effect of negating a favorable answer to the requested issue. *Byerley v. Bauer*, 99 S.W.2d 641 (Tex.Civ.App.—Beaumont 1936, writ dism'd). Thus, appellees' assertion that no harmful error was made by the trial court in its refusal to submit the requested issues and instructions because the answers to the submitted issues negated affirmative answers to the requested issues is without merit.

 If there is some evidence to support properly requested special issues, the trial court's refusal to submit them constitutes reversible error. *Southwestern Bell Telephone Co. v. Thomas*, 554 S.W.2d 672 (Tex.1977). A court may not properly refuse to submit special issues merely because the evidence is factually insufficient to support affirmative findings thereto. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Mutual Life Ins. Co. of New York v. Steele*, 570 S.W.2d 213 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n. r. e.).

With the above in mind, the record must be reviewed to determine whether or not there is some evidence to support GE's requested issues on assumption of risk and for misuse.

Looking first at the assumption of risk defense, it is again noted that this defense is raised upon a showing that the plaintiff knew and fully appreciated the nature and extent of the dangerous condition and yet still encounters the danger or risk voluntarily. The evidence relied upon by GE only indicates that Mr. Schmal was knowledgeable concerning the operation of the piercing press. It does not, however, indicate that he had a full appreciation of the nature and extent of the dangerous condition that he was encountering when the fatal accident occurred. Thus the trial court did not err in failing to submit the issue of assumption of the risk.

Turning to the misuse defense, it is recalled that misuse is established if the misuse of the product was unforeseeable by the manufacturer-supplier. The evidence indicates the procedure Mr. Schmal was utilizing at the time of his death was being done for the first time. A witness testified that this procedure was unwise and unsafe. A design engineer testified that it was impossible to anticipate the use of the machine in such a manner. There is evidence that the use of the piercing press in this manner was the cause of Mr. Schmal's death. This evidence raised a fact issue with regard to misuse and the trial court erred in not submitting issues thereon to the jury. The cause therefore will be reversed and remanded for a new trial.

GE also complains of the trial court's failure to grant a mistrial due to alleged improper jury argument by appellees' counsel. GE points out that counsel informed the jury that GE had dismissed its cross-actions against DeMag and Fielding and argued that "if you have got a bear in a bear trap you don't turn him loose."

Even though this cause is being remanded for a new trial, this point of error has been considered and is found to be without merit. A review of the parties' jury arguments reveals that appellees' argument was invited. As noted by our Supreme Court in *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835 (Tex.1979), one of the elements a complainant must prove in order to gain reversal based upon improper jury argument is the fact that such improper argument was not invited or provoked.

By its final point of error, GE maintains that the trial court erred in entering judgment for plaintiffs in the total sum of $303,758.00 instead of the sum of $237,091.33.

As previously noted, prior to trial plaintiffs settled with two defendants, DeMag and Fielding, for $400,000.00—each paying $200,000.00. Neither admitted any liability. GE then voluntarily dismissed its action for contribution and indemnity against them but plead that both were joint tort-feasors and that plaintiffs' release had deprived it of its right of contribution and the court should apply the contribution rule among joint tort-feasors. The jury assessed the damages at $700,000.00 and the court entered judgment for the plaintiffs in the total sum of $303,758.00. This sum was arrived at by deducting the settlement sum of $400,000.00 and then adding $2,108.00, the stipulated funeral and burial expenses, and $1,650.00, as an attorney ad litem fee. GE maintains that it is entitled to a two-thirds proportionate reduction of the jury verdict, not merely the $400,000.00 credit. If correct, the proper judgment against GE would be $237,091.33.

The issue in this point of error is whether GE is entitled to a pro rata reduction of the damages found by reason of Article 2212, Tex.Rev.Civ.Stat.Ann.

Texas has two distinct statutes covering contribution among joint tort-feasors. The older statute, Article 2212, has remained unchanged since its enactment in 1917. The newer statute, Article 2212a, is the comparative negligence statute. In 1977, our Supreme Court held that contribution under Article 2212a was limited to contribution between negligent tort-feasors. Article 2212 applies in actions based upon strict liability in tort. *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex.1977).

Chief Justice Guittard of the Dallas appeals court thoroughly discussed the problems of settlements under Article 2212 in the case of *Deal v. Madison*, 576 S.W.2d 409

(Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.). It is recognized, as pointed out by the plaintiffs, the case involved the application of Article 2212a of the Texas Revised Civil Statutes and the discussion of the law pertaining to Article 2212 may well be considered as pure dicta. However, his discussion of the leading cases that were involved with the application of Article 2212 is most helpful. The decisions are: *Gattegno v. The Parisian*, 53 S.W.2d 1005 (Tex.Com. App.1932, holding approved); *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935); and *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1965).

In *Gattegno* the Commission of Appeals expressed its views on the effect of a release by one of two tort-feasors saying that if both the defendant and the settlor were active tort-feasors, the release discharged at least half of the damages and if the consideration for the release should be more than half of the damages found, the plaintiff could in no event have a double recovery for the same wrong.

In *Bradshaw* the supreme court held that a plaintiff who had received the full amount of his damages, as later found by the jury, in consideration of a covenant not to sue one tort-feasor, could recover nothing further from a second tort-feasor.

In *Palestine Contractors, Inc.* the supreme court held that by making a covenant not to sue, even though the recited consideration was nominal and never paid, the plaintiff had discharged one-half of her damages.

The Dallas court also discusses its own case of *Petco Corporation v. Plummer*, 392 S.W.2d 163 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.), and concluded that it did not in such case hold that a third person who has bought his peace must actually be made a party to the suit before his negligence can be determined for the purpose of a proportionate reduction of the damages.

Plaintiffs, however, insist that GE gave up any right it had to a "*Palestine Contractors* proportionate reduction" by voluntarily dismissing its cross-actions against DeMag and Fielding prior to the trial. They contend that a "proportionate reduction", rather than "dollar for dollar reduction" can be received only if the settling tort-feasors are actual parties to the suit during the trial of the suit and there are findings that the settling tort-feasors were at fault.

After a careful review of the noted cases and others, the language of *Deal v. Madison*, supra, is most convincing, such as:
"... Bringing in a third party against whom no relief can be granted in order to determine what relief should be granted as between the original parties is an empty formalism.... Their presence has served only to present problems to trial judges with respect to rights to peremptory challenges and cross-examination of ostensibly adverse witnesses, and to confuse juries with respect to the true interests of the parties before them, since these parties, though apparently in the positions of defendants, often have made provisions in their settlement agreements which aligned their interests with the plaintiffs, ...".

We would therefore reject the "empty formalism" required by some and hold that the proper judgment against GE, if the same were upheld on all other grounds, would be in the sum of $237,091.33.

The cause is reversed and remanded.