**CASH AMERICA INTERNATIONAL, INC., Appellant,**

v.

**HAMPTON PLACE, INC., Appellee.**

No. 2–96–223–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 30, 1997.

Rehearing Overruled Dec. 4, 1997.

Lee F. Christie, Gregory W. Higgins, Pope, Hardwicke, Christie, Harrell, Schell & Kelly, L.L.P., Fort Worth, for Appellant.

Donald H. Ray, Dan W. Lane, Lane, Ray, Wilson, Carry & Steves, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION

DAUPHINOT, Justice.

### BACKGROUND FACTS

Cash America International, Inc. ("Cash America")[1] and Cash Venture, a joint venture of Sid Whitener and Dick Allen, entered into an agreement under which Cash Venture would build a building with the understanding that Cash America would lease a portion of it for a pawn shop.[2] The lease was signed in June 1985. It obligated Cash America to pay $3,000 monthly rent for fifteen years and provided Cash America with an option to buy after the fifth year.

The construction of the building was delayed, and when it was completed it did not meet the specifications of Cash America. Cash America then met with Cash Venture to renegotiate the lease. The parties agree that the monthly rent was reduced to $2,500, but they disagree on whether other modifica-

---

1. A subsidiary of Cash America, Big "O" Pawn Corp., actually entered into the agreement and lease, but Cash America has agreed to assume the liability, if any, of Big "O." We therefore use Cash America to refer to both parent and subsidiary.

2. Cash Venture dissolved and the partners declared bankruptcy. The bank foreclosed on the building, and Hampton Place, Inc., of which Sid Whitener was an officer, bought it.

tions were made. Cash America contends that the lease term was reduced to six years; Hampton Place, Inc. ("Hampton"), who bought the building in 1991, asserts that the lease term remained at fifteen years. Cash America moved in to the building after the meeting.

Cash America vacated the building in May 1992, six years after it moved in. Hampton then brought this action, claiming that Cash America anticipatorily breached the lease. The trial court refused to submit jury questions on mitigation. The jury returned a verdict in favor of Hampton, from which Cash America appeals.

In eleven points, Cash America complains that the trial court erred by

- admitting a handwritten note because it was not properly authenticated and it contained inadmissible hearsay (points one and two);

- refusing to submit a jury question on whether Hampton undertook a duty to mitigate (point four);

- refusing to submit jury questions on whether Hampton breached a duty to mitigate and on the amount of damages Hampton could have avoided if it had mitigated (points five and six);

- allowing Hampton to change its theory of recovery after irrevocably electing a remedy (point three);

- refusing to submit a jury question on Hampton's waiver of its right to reject lease proposed by Cash America (point seven);

- submitting the first jury question so that a modification could only be found as of April 1, 1986 (point eight); and

- not making the jury's consideration of damages conditional on positive answers to liability questions (point nine).

Cash America further complains that there is insufficient evidence to support the jury finding that there was not a modification on April 1, 1986 (point 10) and that there is no evidence, or, alternatively, insufficient evidence, to support the jury award of damages (point 11).

## DECISION

We hold that Hampton had a duty to mitigate as a matter of law. We further hold that the failure to mitigate was sufficiently pled and that evidence on the issue was before the jury. We therefore hold that the trial court reversibly erred by refusing to submit jury questions on mitigation. As a result, we sustain the fifth and sixth points and reverse and remand this case for a new trial. Because we are remanding, we also hold, in the interest of judicial efficiency, that the trial court's error, if any, in admitting the handwritten note was waived because the substance of the evidence complained of was admitted earlier with no prior objection. Error, if any, was harmless for the same reason.

Because our resolution of the points on mitigation is dispositive, we do not reach the remaining points.

## MITIGATION

In two points, Cash America complains that the trial court erred by failing to submit the following jury questions:

*JURY QUESTION NO. 8:* Do you find that Plaintiff used reasonable care to relet the property after Defendant vacated it?

You are instructed that if a landlord undertakes an obligation to relet the property, the landlord must use reasonable care to lessen or mitigate its damages, if any.

Answer "YES" or "NO."

ANSWER: _____

. . . .

IF YOU ANSWERED JURY QUESTION NO. 8 "YES", AND ONLY IN THAT EVENT, THEN ANSWER QUESTION NO. 9.

*JURY QUESTION NO. 9:* What amount of damages, if any, do you find that Plaintiff could have avoided if it had utilized reasonable care to lessen its damages and relet the property?

Answer in dollars and cents.

ANSWER: _____

## Standard of Review

■ If there is some evidence to support the submission of a jury question, the trial court's refusal to submit it, if tendered in substantially correct form, is reversible error.[3]

## Substantive Law

The Texas Supreme Court has recently held that a landlord "must have a duty to mitigate when suing for anticipatory repudiation. Because the cause of action is contractual in nature, the contractual duty to mitigate should apply."[4] The Court also held that the duty to mitigate "requires the landlord to use objectively reasonable efforts to fill the premises when the tenant vacates in breach of the lease."[5] The Court further held (1) that an allegation that the landlord failed to mitigate "is similar to an avoidance defense; evidence of failure to mitigate is admissible only if the tenant pleads the failure to mitigate as an affirmative defense;" and (2) that the tenant has the burden of proof on the issue.[6] In *Austin Hill Country,* the Court pointed out that Austin Hill Country pled failure to mitigate in its first amended answer, introduced evidence that Pacific Palisades rejected two offers from different members of Hill Country to lease the building, and tried to prove that Pacific Palisades did not advertise for tenants in a commercial publication, even though that had been its practice in the past.[7] The Court then reversed and remanded the case for new trial because the trial court had refused to submit a mitigation instruction.[8] The instruction requested by Austin Hill Country was:

"Consider the following elements of damages, if any, and none other: You are instructed that the Landlord can recover as damages the present value of the rentals that accrue under the lease, reduced by the reasonable cash market value of the lease for the unexpired term.... *Do not include in your answer any amount that you find ... [Palisades] could have avoided by the exercise of reasonable care."*[9]

In reversing, the Texas Supreme Court held that the emphasized instruction should have been given.[10]

## Analysis

In the case before us, Hampton sued on a theory of anticipatory repudiation, and Cash America pled failure to mitigate in its amended answer.

■ In cross-examination, Sid Whitener, a partner in Cash Venture and principal in Hampton, admitted that the only mitigating act by Hampton for over a year after Cash America vacated the premises was to place a sign in the window indicating the space was for lease. More than a year after Cash America vacated the space, some newspaper ads were run, but the property was never listed with a commercial broker and never placed on a commercial listing available to brokers generally. There was also evidence that Hampton had promised in writing to mitigate damages. Finally, an expert for the defense testified about the means that someone would use to actively market a property, noting that placing a sign in the window would not, by itself, be adequate and further noting that usually, the property would be listed. He also pointed out that the space in question was still available and estimated its fair rental value at its best use, which was that of retail or office space. In contrast, Hampton's expert testified that the best use of the property was as storage space. Because Cash America sufficiently pled mitigation and presented evidence on the issue, we hold that the trial court's refusal to submit

3. *See General Elec. Co. v. Schmal,* 623 S.W.2d 482, 486 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.).

4. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.,* 948 S.W.2d 293, 300 (Tex.1997).

5. *Id.* at 299.

6. *Id.* at 300.

7. *Id.* at 295, 300.

8. *Id.* at 300.

9. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.,* 938 S.W.2d 469, 470 n. 1 (Tex.App.—Austin 1995) (emphasis added), *rev'd,* 948 S.W.2d 293 (Tex.1997).

10. *Austin Hill Country,* 948 S.W.2d at 300.

jury questions on mitigation was reversible error.

## Hampton's Arguments

Hampton contends that because the trial court deducted the present value of the rental value of the premises for the remainder of the lease, Cash America received credit for any damages incurred by Hampton's failure to mitigate. However, neither question tells the jury that in determining the present value of the rentals and the reasonable cash market value of the lease for the unexpired term, the jury should not include amounts that Hampton could have avoided had it exercised reasonable care in managing and maintaining the property. The mitigation instruction sanctioned by the Texas Supreme Court asks the jury to reduce damages by not only the reasonable cash market value for the unexpired term, but also by the amount of damages, if any, that could have been avoided had the landlord used "reasonable care" in reletting the premises. This additional instruction permits the jury to weigh evidence of the amount of money, if any, lost by the landlord's failure to exercise reasonable care in maintaining and managing the property, which would reduce the cash market value of the lease and thus reduce the damages owed the landlord. The trial court therefore erred by refusing to give the instruction.[11] We sustain the fifth and sixth points.

## HANDWRITTEN NOTE

In the first and second points, Cash America complains that a handwritten note, allegedly authored by Dick Allen, who was deceased at the time of trial, was admitted into evidence. Cash America argues that it was both improperly authenticated and inadmissible hearsay.

## Preservation of Error

■ To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.[12] If a party fails to do this, error is not preserved, and the complaint is waived.[13] Furthermore, error, if any, in admitting evidence is harmless if the same evidence appears elsewhere in the record.[14]

## Analysis

■ Whitener testified that he and Dick Allen had been equal partners in Cash Venture. He also testified that Allen sometimes went by Richard Allen and that he sometimes signed his name as R.G. Allen. He further testified that he and Allen signed the original lease as landlords. The lease was admitted without objection. Later, the following exchange took place:

Q And did he [Allen] give you some instruction regarding one of those leases?

A He left me a handwritten note that says, if I remember correctly, this was supposed to be nine years with a six year option instead of six years with a nine year option which, after Dick reviewed whichever lease he reviewed or maybe both of them since they both call for the same terms, you know, I called and told them that these were unacceptable once again.

Q Just tell us very quickly, is that the note you are referring to?

A Yeah. This is the original note.

The note was then offered into evidence. Cash America's counsel objected on the ground of improper predicate, and the trial court sustained the objection. The following exchange then took place:

Q Mr. Whitener, did you—Do you recall receiving that note?

11. We also note that the two proposed questions are remarkably similar to the instruction denied in error by the trial court in *Austin Hill Country* and specifically emphasized as necessary by the unanimous Texas Supreme Court.

12. *See* Tex.R.App. P. 33.1(a); *see also* Tex.R. Civ. Evid. 103(a)(1).

13. *See Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

14. *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

A Yes, I do.

Q And do you recall how you received the note?

A It was affixed to one of these leases and was on my desk for review.

Q When you say "affixed," how do you mean?

A I believe it was paper-clipped on.

Q It was paper-clipped to one of the two leases?

A Correct.

Q In candor, do you know which of the two leases?

A No.

Q Could it have been both of them?

A It could have been. They are both the same date.

Q Does this memorandum give you instructions as to do something?

A What this says, which we had discussed in that meeting is that Dick reviewed these leases when he received them. They were mailed to him. He remembers ——

Cash America's counsel then objected as to the witness testifying as to the substance of the note. The trial court noted correctly that the substance of the note had already come in and overruled the objection. Whitener next testified that the note would have been written "in a very timely manner." The note was then offered and met with objections of improper predicate and hearsay. The trial court overruled the objections. Whitener then read the note into the record:

Q Now, Mr. Whitener, would you— Would you read that note just line by line? It is not very long.

A "Sid, wasn't lease to be for nine years? This is for six with option. Lease, May 15th? Insurance, taxes. Please call Jack D., D.A.[,]" which is the way Dick would have initialed it.

The evidence complained of by Cash America, that the agreement was for nine years instead of six and that Allen wrote the note, came in without objection before the note itself was even offered. Cash America has therefore waived error, if any.[15] Also, because the evidence complained of was already before the jury, error, if any, was harmless.[16] We overrule the first and second points.

We reverse the judgment of the trial court and remand the case for new trial.

---

15. *See* TEX.R.APP. P. 33.1(a); *see also* TEX.R. CIV. EVID. 103(a)(1); *Bushell,* 803 S.W.2d at 712.

16. *See Gee,* 765 S.W.2d at 396.