**JETTY, INC. et al., Appellants,**

v.

**HALL–McGUFF ARCHITECTS, Appellee.**

No. A2068.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 12, 1980.

Rehearing Denied April 2, 1980.

Morris L. Pepper, Bohn E. Phillips, Houston, for appellants.

Ralph J. Pearson, Jr., Liddell, Sapp, Zivley & Brown, Houston, for appellee.

Before BROWN, C. J., and MILLER and PRESSLER, JJ.

J. CURTISS BROWN, Chief Justice.

Hall-McGuff Architects (appellee), a partnership of licensed architects, sued Jetty, Inc. and Jetty-Fagg, Inc. (appellants) to recover for architectural services in connection with the preparation of plans for an office building project for appellants. Trial was to the court, which rendered judgment in favor of Hall-McGuff against both appellants along with attorney's fees and interest. Appellants bring this appeal.

On November 7, 1974, Jetty, Inc., a wholly owned subsidiary of Jetty-Fagg, Inc., and Hall-McGuff entered into a written contract wherein Hall-McGuff agreed to prepare plans and specifications for the construction of an office building, Mr. Jetty, president and chairman of Jetty-Fagg and president of Jetty, Inc., testified that the building had to have 10,000 square feet of net leaseable office space. The building was going to house the offices of Jetty, Inc. and Jetty-Fagg, with additional space to be leased out.

The contract provided that the architect's fee would be nine percent of the total construction cost of the building. The work by Hall-McGuff was to be done in five phases: 1) schematic design, 2) design development, 3) construction documents, 4) bidding and negotiations, and 5) actual construction. If the building was not actually built, Hall-McGuff would receive a certain percentage of the nine percent fee, based on how many phases were completed. Mr. McGuff testified that phase four had been completed, and thus, according to the contract, Hall-McGuff was entitled to 80% of the 9% fee, based on the estimated total construction cost.

Under phase one, Hall-McGuff submitted schematic drawings for appellants' approval. Mr. Jetty approved these drawings, which depicted 10,000 square feet of leaseable space, plus approximately 2,400 square feet of common areas, such as restrooms, corridors and lobbies. Mr. Jetty assented to

this, realizing that the extra square feet were necessary. The schematic drawings also showed the parking lots, walkways and other external aspects of the building. Mr. Jetty also requested that a covered walkway or colonnade, and a second story deck also be added to the design. This was done and appellee then proceeded to the design development phase.

Under this next phase, more detailed drawings, prepared from the approved schematic sketches, were submitted for approval. These drawings showed a total square footage of 13,398 feet, not including the colonnade or deck or any of the external areas such as the parking lots. A cost estimate of $497,775.00 was also included. Although Mr. Jetty testified that the cost was too high, he told Mr. McGuff to proceed with phase three.

Pursuant to phase three, Mr. McGuff prepared the final architectural drawings, to be used in procuring bids on the building. Mr. McGuff testified that during this time, January through March of 1975, he was never told to stop work on the project. Mr. Cope, an employee of Jetty-Fagg, Inc., approved these plans. A revised estimate of $477,600.00 was then sent to appellants.

In phase four, Hall-McGuff assisted appellants in obtaining bids for the project. Again, Mr. McGuff testified that no one at Jetty, Inc. or Jetty-Fagg, Inc. expressed any disapproval with the plans or the project.

In April of 1975, after the phase three drawings were submitted, Hall-McGuff received the last payment from appellants. As late as June, 1975, Mr. McGuff testified that Mr. Canant, an executive of Jetty-Fagg, told Mr. McGuff that the invoices would soon be paid. However, in September, Hall-McGuff was informed that it would not be paid for any of the invoices.

Since findings of fact or conclusions of law were neither requested or filed, it must be presumed on appeal that the trial court made such implied findings as were necessary to support the judgment. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.,* 565 S.W.2d 916 (Tex.Sup.1978).

Moreover, in reviewing the record we may only consider evidence favorable to the judgment and disregard all evidence or inferences to the contrary. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co., supra,* at 918. And, finally, the judgment must be affirmed if it may be upheld on any legal theory that has support in the evidence. *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.Sup.1978).

■ Appellants' main contention is that Hall-McGuff breached the contract, which caused a total failure of consideration by the appellee and thereby excused appellants from making any further payments. Appellants claim that Hall-McGuff breached the contract by designing a building that would cost more than appellants had wanted or was larger than expected. Article 3.5 of the contract stated that any fixed limit of cost "shall be in writing signed by the parties." There is no such writing in the record. Although the record indicates that there was some dispute as to what the cost would be, there is sufficient evidence in the record to support the court's implied finding that the parties had not agreed on a fixed limit of construction cost.

■ The fact that the building may have cost more than the owner wanted is not material when there has been no fixed cost in the contract. *Moore v. Bolton,* 480 S.W.2d 805 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.).

Appellants also complain that the documents submitted under the design development stage deviated from what the contract called for. These plans provide for a project of approximately 43,000 square feet, including about 22,000 square feet, for the office building and about 21,000 square feet for the external areas. Included within the 22,000 square foot figure for the building is the 8,000 square feet colonnade and deck, specifically requested by Mr. Jetty. Approximately 3,000 square feet in the building was necessary for the requisite common areas, such as restrooms, lobbies, stairways and utility space. This leaves 10,000 square feet of usable office space, which is what

the contract required. These common areas are obviously necessary in any modern office building and were approved by appellants.

As to the external aspects of the project, since the building was to be built on an undeveloped lot, it obviously had to have the necessary facilities incident to a modern office building, such as parking lots and walkways. These facilities are necessary for the building to be of any use at all and are required before a building permit could be issued. Furthermore, these areas were shown on all of the drawings approved by appellants. Mr. Jetty even discussed the parking lot requirements with Mr. McGuff.

Appellants next urge that the court erred in allowing recovery under a subsequent oral contract. They claim that such oral contract is impermissible under the contract, the Parol Evidence Rule, and for lack of new consideration. However, as stated above, the designs and plans prepared by Hall-McGuff were in accordance with the written contract. And there is sufficient evidence to support the implied finding that there had been no subsequent oral contract.

We need not consider appellant's points of error complaining of recovery under the theory of quantum meruit since we have held that there is evidence to support a recovery under the express written contract.

■ Appellants also urge that the trial court erred in awarding prejudgment interest at the rate of nine percent instead of six percent. The contract provides that payments due the architect shall bear interest at the "legal rate." Appellee argues that the legal rate refers to the maximum rate allowed by law. This is not the case. Article 5069–1.03, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1971–1979), the caption of which reads "legal rate applicable," states, in part, that "[w]hen no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed . . . ." By referring to the legal rate, the parties have not agreed on a specified rate of interest and thus article 5069–1.03 governs the interest rate. There-

fore, the legal rate, in reference to prejudgment interest, is six percent.

■ Lastly, appellants assert that the trial court erred in rendering judgment against Jetty-Fagg, Inc. They claim that there is no evidence, or alternatively, insufficient evidence to support a finding that Jetty, Inc. is a mere instrumentality or an alter ego of Jetty-Fagg, Inc. The supreme court has stated that "where management and operations are assimilated to the extent that the subsidiary [corporation] is simply a name or conduit through which the parent [corporation] conducts its business, the corporate fiction may be disregarded to prevent fraud or injustice." *Gentry v. Credit Plan Corporation of Houston,* 528 S.W.2d 571, 573 (Tex.Sup.1975), Jetty, Inc. is a wholly owned subsidiary of Jetty-Fagg, Inc. with a complete unity of officers and directors. All work done by Hall-McGuff was paid for by Jetty-Fagg. Jetty, Inc. was also a minimally capitalized corporation that had not engaged in any business up to that time. Further, the project manager of the project, Mr. Beggs, believed that the project was a Jetty-Fagg project rather than a Jetty, Inc. project. All of the decisions made on behalf of Jetty, Inc. were made by officers of Jetty-Fagg. Thus, there is sufficient evidence to hold that Jetty, Inc. is a mere tool or business conduit of Jetty-Fagg.

We modify that part of the judgment awarding nine percent prejudgment interest and render judgment that Hall-McGuff be awarded six percent prejudgment interest. In all other respects, the judgment is affirmed.

Modified in part, and as modified affirmed.