**TEXAS INDUSTRIES, INC., and Everman Corporation, Appellants,**

v.

**Randall Wade LUCAS, Appellee.**

**No. C2903.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 15, 1982.

Rehearing Denied May 20, 1982.

Opinion after Entry of Remittitur
June 3, 1982.

Kurt Nelson, Craig Smyser, Vinson & Elkins, Houston, for appellants.

John C. Werner, Werner & Rusk, Brian Chandler, Michael Windham, Hicks, Hirsch, Glover & Robinson, Houston, for appellee.

Before MILLER, PRICE and JAMES, JJ.

JAMES, Justice.

This is an appeal from a judgment rendered in favor of appellee, Randall Wade Lucas, for personal injuries sustained on a construction site. Appellee sued appellants, Texas Industries, Inc. (hereafter TXI) and Everman Corporation (hereafter Everman), under the theories of negligence, breach of express and implied warranties, and strict liability. We affirm on condition of remittitur as to TXI and reverse and render as to Everman.

The accident which is the subject of this appeal occurred during the construction of the Greenway Plaza Parking Garage in Houston, Texas. Everman contracted with Miner-Dederick Construction Company, the general contractor of the garage, to fabricate and erect all the beams to be used in the garage. Everman, in turn, contracted with TXI to manufacture some of the beams and Precast Erectors, Inc., (hereafter Precast), to erect them. It was undisputed that the beam which caused the accident was manufactured by TXI Structural Products (hereafter Structural), a wholly owned subsidiary of TXI.

The beams contained inserts on both the face and the edge of the product. The inserts were used for purposes of loading, unloading and erecting the concrete pieces. This was performed by use of bell rings and bolts. A bolt would be placed through the bell ring and screwed into the insert contained in the beam. A crane would then be secured to the bell ring eyeholes by use of cables thus allowing the piece of concrete to be handled in a safe manner.

On May 20, 1977, 18 to 20 trucks carrying pre-fabricated concrete beams were lined up outside the Greenway Plaza construction site. When an employee of Precast prepared to raise the first of two beams, he noticed that the beam contained 1″ inserts as opposed to 1¼″ inserts as called for by the plans and specifications. This employee informed the foreman and also advised him that while they did have 1″ bolts, they did not have corresponding 1″ bell rings. Find-

ing no washers available to make up for the size difference, the Precast employee decided to attempt to unload the beams with the 1″ bolt and 1¼″ bell ring rigging apparatus. No warnings were made by Precast to the workers on the site of the danger which existed with regard to the rigging of the beam. The crane operator lifted the beam off the truck, suspending it in mid air. As the beam began to swing free from the truck, one of the bolts slipped through the bell ring causing the beam to break free. Appellee, an employee of Precast, was standing underneath the beam when it failed causing a crushing injury to his leg.

At the conclusion of the evidence in the trial, the case was submitted to the jury on special issues. After several motions by appellants to disregard various special issues, motions for judgment non obstante veredicto and new trial, and appellee's motion to file second trial amendment after the verdict, the court signed a third amended final judgment ordering that appellee recover of and from appellants, jointly and severally, the sum of $1,913,450.94. Based on both appellant's pleas of contribution as against each other, the trial court ordered, pursuant to Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon Supp. 1982), that the total award should be shared by appellants TXI and Everman in the proportions of 85% and 15% respectively. The pleas of indemnity of appellants as against each other were denied.

Because each appellant brings forward different points of error, their contentions will be discussed separately. We will first discuss the points of error raised by Everman.

In its points of error 1 through 7, Everman asserts that the trial court erred in entering judgment based on the jury's answers to Special Issue Nos. 14, 15 and 16. Everman asserts that the jury's findings with respect to its conduct do not establish negligence on its part sufficient to entitle appellee to recover of it an amount equal to 15% of the total award. We agree.

The following special issues were submitted to the jury pertaining to the conduct of Everman:

Special Issue No. 12—Do you find from a preponderance of the evidence that Defendant, EVERMAN CORPORATION, was negligent in failing to inspect the beam in question before it was shipped to the job by TXI STRUCTURAL PRODUCTS, INC.?

Answer—We do not.

If you have answered Special Issue No. 12 "We do," and only in that event, then answer:

Special Issue No. 13—Do you find from a preponderance of the evidence that such failure was a proximate cause of the occurrence in question?

Answer—_____

Special Issue No. 14—Do you find from a preponderance of the evidence that prior to the occurrence in question, employees of EVERMAN CORPORATION advised employees of PRECAST ERECTORS, INC., that 1¼″ rigging equipment was all that was necessary for the job?

Answer—We do.

If you have answered Special Issue No. 14 "We do," and only in that event then answer:

Special Issue No. 15—Do you find from a preponderance of the evidence that such advice was negligence?

Answer—We do.

If you have answered Special Issue No. 15 "We do," and only in that event then answer:

Special Issue No. 16—Do you find from a preponderance of the evidence that such advice was a proximate cause of the occurrence in question?

Answer—We do.

■ The trial court rendered its judgment against Everman based on the jury's answers to the above special issues. Everman does not deny that it gave the advice to Precast inquired of in Special Issue No. 14. The advice was given before the beams were ever delivered to the job site and it had a right to rely on the plans and specifications; that is, that beams with 1¼″ inserts would be delivered. Viewing the evi-

dence as a whole, we can find no evidence to support the jury's finding that this advice constituted negligence. In fact, the jury found in Special Issue No. 12 that Everman was not negligent in failing to inspect the beam *before* it was shipped to the job.

■ Everman had contracted to buy beams from TXI "F.O.B. jobsite per plans and specifications." Everman's negligence, if any, was in failing to inspect the beam and in allowing its erection once it was delivered to the site. Appellee had a burden to prove that it was this failure to inspect, if any, which constituted negligence that was a proximate cause of appellee's injuries. No such special issue was submitted. In the case where an issue is necessarily referable to one submitted and answered by the jury, the trial court will be deemed to have found this omitted issue in such manner as to support the judgment. Tex.R.Civ.P. 279. However, a finding of negligence on the part of Everman is an independent ground of recovery for which appellee has the burden of proof. Because no issue was given or requested establishing that Everman was negligent in failing to inspect the beam *after* it was delivered to the job site, the issue was waived. Tex.R. Civ.P. 279. Since this issue was one relied upon by appellee, Everman's objection to such failure to submit the issue suffices without the need for Everman to request the issue in writing. Tex.R.Civ.P. 279. Because there has been no finding which supports the judgment in favor of appellee against Everman, we sustain Everman's points of error 1 through 7. Accordingly, we reverse and render that appellee take nothing as against Everman.

Everman's point of error 8 concerns the trial court's alleged error in disregarding and failing to consider the jury's answer to Special Issue No. 26 which established the fault of Precast. We will discuss this point in connection with TXI's point of error 13 as both appellants have like contentions.

We now turn to the points of error brought forth by TXI. These points will be discussed in the order in which they appear in the brief with the exception of point of error 6 which will be discussed after point of error 13.

In its points of error 1, 2 and 3, TXI complains of the trial court's rendering judgment against it based on the jury's findings that Structural was the alter ego of TXI. TXI first alleges that appellee sued the wrong corporation since it was Structural and not TXI who manufactured the beam. Second, it asserts that it cannot be responsible for the torts of Structural because Structural is not the alter ego of TXI.

In order to find liability on the part of the parent for the torts of the subsidiary under the theory of alter ego, many factors must be considered. TXI suggests that the first consideration is to categorize the case as either one of tort or contract. While a finding of alter ego may be more readily found in a tort case because there is no arms length dealing between the plaintiff and the subsidiary, as would be the case in a contract dispute, the standards of consideration are substantially the same in both types of cases. See *Jetty, Inc. v. Hall-McGuff Architects*, 595 S.W.2d 918 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), a contract case wherein the court based its holding on *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex.1975), the leading supreme court case in a tort setting.

An article entitled "Insulation from Liability Through Subsidiary Corporations" written by the late Justice William O. Douglas and Carrol M. Shanks has been repeatedly cited by the Texas Supreme Court as helpful in making this determination. See *Gentry, supra*, and *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968). The authors suggest four standards to which the corporation should adhere so as to prevent the assimilation of the corporations. The relevant portions of each of these standards are: (1) A separate financial unit should be set up and maintained. That unit should be sufficiently financed so as to carry the normal strains upon it. (2) The day to day business of the two units should be kept

separate. (3) The formal barriers between the two management structures should be maintained. The ritual of separate meetings should be religiously observed. (4) The two units should not be represented as being one unit. Those with whom they come in contact should be kept sufficiently informed of their separate identity. The authors also list the following considerations: (1) stock ownership; (2) degree to which the subsidiary is financed by the parent; (3) the method of such financing; (4) the extent to which there is a common directorate; (5) the extent to which there are common officers and employees; (6) the extent to which separate meetings of stockholders and directors are held; (7) the extent to which both have common departments of business; (8) the degree to which contracts between the two are favorable to one rather than the other; (9) the extent to which separate books and accounts are kept; (10) the extent to which an officer or director of one is permitted to determine the policies of the other; (11) the extent to which an employee, officer, or director of the parent is casually connected with the tort or contract on which the suit is brought; (12) the type of business of each; (13) the extent to which the trade or public generally regards the two units as one business unit; (14) whom the contract claimant regards as the promisor. Douglas and Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929).

■ The evidence was sufficient in the instant case to support the jury's finding of alter ego. The evidence before us is as follows: TXI owns all the stock of Structural; the two companies have many of the same officers, including the treasurer; the companies file consolidated income tax statements; Structural's operating capital is financed by TXI and not borrowed from a bank as is the customary practice; the safety aspects of Structural's business are controlled by policies dictated by the safety administrator of TXI; both companies use the same logo; TXI's signs appear on all of Structural's plants; and Structural's business comes from contracts entered into by TXI. The evidence also indicates that TXI's only business is doing business through its subsidiaries.

The testimony of the vice president of Everman, with whom TXI entered into the contract to manufacture the beam, was to the effect that it was difficult to know with which company he was dealing in the past because of the close relationship of the two companies and the use of the same logo. In addition, the general manager of Structural testified that although he began working for TXI in 1957 and had been promoted to another position with Structural, the change was not such that he lost his tenure with respect to employee pension plans and other benefits. Likewise, the vice president of both companies and operational manager of Structural testified that for twenty-two years he has worked in four divisions of the company but he has always considered himself associated with the parent company, TXI. There was further evidence showing that there was no written agreement between TXI and Structural regarding the fabrication of the Greenway Plaza job. It is suggested by appellee that this is an unusual situation between companies who deal at arms length but an understandable situation where the two companies involved are for all practical purposes the same.

In that regard, the safety administrator for TXI in fact testified during depositions which were read at the trial that the two companies were for all practical purposes the "same company." Finally and most importantly, the contract to manufacture the beams written by Everman was addressed to Texas Industries, Inc., with attention to Mr. Clyde Spraggins. Although Mr. Spraggins was an employee and officer of Structural, the signature line for the agreement lists Mr. Spraggins' name under "Texas Industries, Inc." No allegations were made by TXI during discovery proceedings that the person who signed the contract was not authorized to sign for TXI. We find that the jury had before it sufficient evidence to support its finding that Structural was the alter ego of TXI. That finding will not be disturbed. Accordingly, appellant's points of error 1, 2 and 3 are overruled.

■ TXI claims in its fourth point of error that the trial court erred in overruling its objections to the charge and in rendering judgment against it because Special Issue No. 11 incorrectly submits a controlling factual issue. Special Issue No. 11 provides as follows:

Do you find from a preponderence of the evidence that on the occasion in question TEXAS INDUSTRIES, INC., and TXI STRUCTURAL PRODUCTS, INC., activities became so blended that TXI STRUCTURAL PRODUCTS, INC., for all practical purposes became the alter ego of TEXAS INDUSTRIES, INC.?

The following instruction accompanies the issues:

"Alter ego" as used in this Issue means the activities of the corporations became so blended that the public would become confused as to which corporation was doing the activity in question as to violate the intregrity of the respective corporations.

TXI argues in support of this point of error that because this is a tort case, the relevant question is whether Structural was set up to fabricate pre-stress concrete structures without sufficient corporate assets to satisfy a judgment arising out of torts committed by it. TXI relies on *Gentry, supra,* for the above contention. The court in *Gentry* considered the financial strength or weakness of the subsidiary an important consideration but this was not the exclusive consideration. We agree with TXI that in a tort case, it is not necessary to establish fraud. Yet we do not find that that was the sole purpose of Special Issue No. 11. In *Gentry,* the court pointed out that the corporate fiction may be disregarded to prevent fraud or injustice. Here, as evidenced by the contract between Everman and TXI, the corporations were blended to such an extent that were liability not imposed on TXI, the result would be unjust. Appellant's point of error 4 is thus overruled.

■ In its fifth point of error, TXI complains of the trial court's submission of Special Issue No. 11 because the issue and the instruction accompanying it were allegedly confusing. It asserts that the "blending" language of the issue focuses on only one piece of evidence of alter ego status. Rule 277 of the Texas Rules of Civil Procedure provides that issues may be submitted broadly. It is not necessary for appellee to submit separate factual inquiries regarding the question of alter ego. We overrule appellant's point of error 5.

TXI complains in its points of error 7, 8 and 9 that Structural was not negligent toward appellee because it did not owe him a duty which was subsequently breached. TXI asserts that it was not negligent as a matter of law and that there was no evidence or insufficient evidence to support the jury's response to Special Issue Nos. 1, 4, 7 and 9. The jury answered "We do" to the issues inquiring as to whether TXI was negligent in doing the following: (S.I. No.1) deviating from the shop drawings by putting a 1″ erection insert into the beam in question, (S.I. No.4) failing to put 1¼″ erection inserts into the beam after making the above discovery, (S.I. No.7) shipping the beam with 1″ erection inserts, and (S.I. No.9) not warning Precast in advance of shipment that different size bolts and lifting devices would be required to handle the beam. TXI claims that the only duty Structural breached was the duty it owed Everman to supply beams in line with Everman's specifications. It further contends that it only owed the Precast employees a duty to supply a beam that could be safely lifted using ordinary methods; i.e., one that would not come apart under standard erection procedures. TXI therefore contends that its deviation from the plans by manufacturing and delivering a beam with the wrong size inserts is not a breach of a duty it owed to appellee.

Appellant cites *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975) and *Abalos v. Oil Development of Texas,* 544 S.W.2d 627 (Tex.1976) for its contention that it owed appellee no duty. *Rosas* was a premise liability case and *Abalos* was tried based on the doctrine of "discovered peril." These cases are not instructive on the issue before us. The question here is on what

basis was a duty owed appellee by TXI. The contract between Everman and TXI provided in part as follows: "We will purchase the following items F.O.B. truck jobsite per plans and specifications." The shop drawings specified a particular size insert with which to manufacture the beams. If any size insert would have been proper and safe, a particular size would not have been specified. TXI thus had a contractual duty to manufacture the beams in the manner called for by the plans.

The supreme court has held as follows:

Accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and the negligent failure to observe any of these conditions is a tort as well as a breach of the contract. * * * [W]here there is a general duty, even though it occurs from the relation created by, or from the terms of a contract, and that duty is violated, either by negligent performance or negligent nonperformance, the breach of the duty may constitute actionable negligence. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947).

■ In the instant case, TXI may assert that because the contract to manufacture the beams was not between it and appellee, that the above rule does not apply. That question goes to whether appellee's injury as a result of the breach of duty by TXI was foreseeable, an element of proximate cause to be discussed under TXI's points of error 11 and 12. Under the contract, TXI had a duty to manufacture the beams in the manner called for by the plans. It also had an implied duty to deliver only those beams in compliance thereto. In connection with that contract, TXI had a duty to exercise ordinary care in the construction called for and to do the work in a good and workmanlike manner. *H.M.R. Construction Co. v. Wolco of Houston, Inc.*, 422 S.W.2d 214 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). Because the beam in question deviated from the plans, TXI breached a duty it had to appellee and an action in tort for negligence could be brought. We find the evidence was sufficient to support the jury's response to Special Issue Nos. 1, 4, 7 and 9 and thus overrule appellant's points of error 7, 8 and 9.

■ TXI contends in its point of error 10 that the conduct of Precast was not only unforeseeable but also a new and independent cause of appellee's injury. Its points of error 11 and 12 concern the trial court's alleged error in rendering judgment based on the jury's answers to Special Issue Nos. 2, 5, 8 and 10. It asserts that there was no evidence and insufficient evidence to support the jury's findings. The jury answered "We do" to the issues submitted inquiring as to whether TXI's acts constituting negligence were a proximate cause of appellee's injury. Since we find that appellee's injury was a foreseeable result of a breach of duty by TXI and therefore that TXI's negligence was a proximate cause of the injury, we need not discuss TXI's contentions under its "new and independent cause" theory. This is because a new and independent cause must be one "incapable of being foreseen by the original wrongdoer, in the exercise of ordinary care." *Horne Motors, Inc. v. Latimer*, 148 S.W.2d 1000 (Tex.Civ.App.—Dallas 1941, writ dism'd judgm't cor.). See *Reeves v. Tittle*, 129 S.W.2d 364 (Tex.Civ.App.—Eastland 1939, writ ref'd); *Kimbriel Produce Co. v. Mayo*, 180 S.W.2d 504 (Tex.Civ.App.—San Antonio 1944, writ ref'd w.o.m.); *Clark v. Waggoner*, 452 S.W.2d 437 (Tex.1970); *Johnson v. Acord*, 608 S.W.2d 257 (Tex.Civ.App.—San Antonio 1980, no writ), all holding that the original wrongdoer may not escape liability where there is a reasonable likelihood that a third person may act in a manner contributing to the injurious effect of the original negligence. TXI's point of error 10 is thus overruled.

■ Proximate cause includes two essential elements: (1) cause in fact—a cause which produces an event and without which the event would not have occurred; and (2) foreseeability. *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466 (Tex.1970); *Hopson v. Gulf Oil Corp.*, 150 Tex. 1, 237 S.W.2d

352 (1951); *Missouri Pacific R. R. v. American Statesman,* 552 S.W.2d 99 (Tex.1977). TXI concedes that the problem here has been narrowed to one of foreseeability. It argues that although TXI might anticipate some complaint from Everman resulting from a job delay if Everman refused to accept the beam, TXI could not forsee that its "perfectly sound beam would fall on a worker because of a patently unsafe lifting procedure." We disagree.

█ The supreme court has written extensively on the foreseeability element of proximate cause. See *Missouri Pacific R. R., supra; Clark v. Waggoner, supra*; and *Genell, Inc. v. Flynn,* 358 S.W.2d 543 (Tex. 1962). In *Clark,* the court states that this element is established by proof "that the actor as a person of ordinary intelligence and prudence should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation." 452 S.W.2d at 439, 440. TXI breached a duty it owed Everman by failing to supply the correct beam. When it discovered this defect before delivering the beam to the site, it was foreseeable that an attempt to lift the beam with improper equipment would be made. This created a danger which TXI should have anticipated. It was not necessary that it anticipate just how the injury would occur. The jury's findings with respect to the question of proximate cause should not be disturbed. Viewing the record as a whole, we find the evidence sufficient to support the jury's answers to the aforementioned special issues. We overrule TXI's points of error 11 and 12.

TXI's complaint in its point of error 13 which is like Everman's point of error 8 concerns the trial court's alleged error in disregarding the jury's findings of negligence and proximate cause on the part of Precast. Special Issue No. 26 and the jury's answers thereto are as follows:

> State the respective percentages by which the fault, if any, of each party found by you to be at fault concurred to bring about the occurrence in question:

| | | |
|---|---|---|
| a. | TXI STRUCTURAL PRODUCTS, INC. | 73% |
| b. | EVERMAN CORPORATION | 9% |
| c. | PRECAST ERECTORS, INC. (excluding acts, if any, by RANDY LUCAS) | 18% |
| d. | RANDY LUCAS | 0% |
| | TOTAL | 100% |

TXI asserts that the basic problem presented by this point of error is to what extent a defendant should be liable for the negligence of another party when neither the plaintiff nor the defendant can sue that other party. In the instant case, a suit against Precast is barred by the Texas Worker's Compensation Act, Tex.Rev.Civ. Stat.Ann. art. 8306 et seq. (Vernon 1967), because Precast's compensation carrier has already paid appellee under its policy. Appellants argue that there is an apparent conflict between the above statute and the Comparative Negligence Act, Tex.Rev.Stat. Ann. art. 2212a (Vernon Supp. 1982), as the latter statute provides that a party shall be liable only for the negligence attributable to its acts. To resolve this conflict, they suggest that the employer, who is immune from suit by an employee or a third party, pursuant to Art. 8306 § 3, should be treated as a "settled" but joined party under Art. 2212a. If their suggestion were given effect, the existence and percentage of Precast's negligence as determined by the jury could be considered in apportioning the percentage of negligence for which they are liable.

█ We agree that there exists no problem in failing to join Precast as a party since Art. 2212a § 2(d) specifically provides that the nonsettling tortfeasor may deduct from the amount for which he is liable a percentage of the amount of the settlement based on the relationship its negligence bears to the total negligence of all the defendants. See *Deal v. Madison,* 576 S.W.2d 409 (Tex.Civ.App.—Dallas, writ ref'd n.r.e.). However, we disagree that the employer is like a "settled" joint tortfeasor. A settlement is an agreement by which

parties reach an understanding in compromise of disputed matters. *Rose v. Pfister,* 607 S.W.2d 587 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). It necessarily follows that only those matters for which a party has a cause of action against another are disputed. If that were not the case, no reason for entering into a settlement agreement would exist.

▇▇▇ A party is barred from seeking contribution and indemnity from a party against whom the injured party has no cause of action. *City of Houston v. Watson,* 376 S.W.2d 23 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). If appellee's cause of action against Precast is precluded by Art. 8306 § 3, then it defies reason to suggest that Precast is a "settled" tortfeasor.

▇▇▇ This issue is one first impression as appellants do not seek contribution and indemnity from Precast but only a consideration of the jury's findings so that a percentage attributable to Precast's negligence may be deducted from the amount they will have to pay. However, we base our decision for this point of error on the policies espoused in *General Elevator Corp. v. Champion Papers,* 590 S.W.2d 763 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) and *Superior Commercial Carpet Service v. American Chain and Cable Co.,* 623 S.W.2d 747 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In *Superior,* although the appeal was from a summary judgment granted in the employer's favor in which it asserted that Art. 8306 § 3 was a bar to the third party's suit against it for indemnity and contribution, the appellant conceded that the employer was not liable to it on that basis. It only wanted to retain the employer as a party so the jury could determine the percentage of negligence attributable to it by having special issues regarding its culpability submitted to the jury. The *Superior* court affirmed the summary judgment relying on *General Elevator, supra,* and *City of Houston, supra.* We hold that the trial court was correct in disregarding Special Issue Nos. 23, 24 and 26. The traditional tort principles of joint and several liability should control where such an employer and third party are liable for injuries to the employee. TXI's point of error 13 and Everman's point of error 8 are overruled.

TXI complains in its point of error 6 that the trial court abused its discretion in permitting appellee's expert witness to testify over its objection. TXI had directed an interrogatory to appellee asking for the identity of any experts he expected to call at trial. Appellee first answered that an economist would be called. However, when TXI sent a letter to appellee requesting the expert's identity, he responded that no expert would testify. The parties thus went to trial with that understanding. During the trial, when TXI requested permission of the court to discuss during jury argument the discount value of cash in hand, appellee asked for leave to call an economist. The trial court allowed the testimony on condition that TXI would first have a chance to depose the expert. The expert's oral deposition was taken between 9:30 and 11:30 P.M. the night prior to his testimony. TXI asserts that it did not have sufficient time to prepare for the expert's cross-examination and that his testimony, which allegedly influenced the jury's finding with respect to loss of future earning capacity to be sustained in the future, should not have been admitted. We agree.

Rule 168 of the Texas Rules of Civil Procedure, provides in part as follows:

Rule 168. Interrogatories to parties

7. DUTY TO SUPPLEMENT

a)(3) if the party expects to call an expert witness whose name and the subject matter of such witness' testimony has not been previously disclosed in response to an appropriate interrogatory, such answer must be amended to include the name, address, and telephone number of the witness and the substance of the testimony concerning which the witness is expected to testify, as soon as is practical, but in no event less than fourteen (14) days prior to the beginning of trial except on leave of court. If such amendment is not timely made, the testimony of the

witness shall not be admitted in evidence unless the trial court finds that good cause sufficient to require its admission exists; . . . .

Appellee now asserts that good cause was shown to the trial court so as to allow the testimony because he was "shocked, surprised and aggrieved" by the court's intention to allow TXI to argue the "discount factor." In addition, he argues that the expert's testimony of the inflation factor was proper rebuttal evidence. A discussion of the "discount factor" does not necessitate an explanation and rebuttal by an expert. It is generally understood by persons of ordinary intelligence that when money is paid "now in cash" as is the language used in damage issues, the sum can gain interest if invested properly thus increasing the present value of the award. Here, a statement to that effect was even made by the trial court. However, the court allowed the expert's testimony over TXI's objection of surprise.

Although we have found no case for the proposition that a trial court abuses its discretion in failing to impose a sanction for failure to comply with a discovery rule and in allowing the expert to testify, a recent article by Justice Spears lends some insight into what the supreme court intended when it promulgated the amendments to Rule 168. Justice Spears writes:

> Several provisions should be noted. First, not only must the name of any new expert witness be disclosed fourteen days prior to trial, but the *substance* of the witness' testimony must be given. . . . Second, if the information is not furnished at least fourteen days prior to the beginning of trial, the expert testimony will not be admitted in evidence unless the trial court finds 'good cause sufficient to *require* its admission.' This provision seems to say that not only must there be a good reason, but one that compels the admission of the testimony. This language is stronger than merely requiring good cause. Spears, *The Rules of Civil Procedure: 1981 Changes in Pretrial Discovery*, 12 ST. MARY's L.J. 633, 650–651 (1981) [Emphasis in original]

In the instant case, appellee did not show a compelling reason to require the admission of the testimony. The testimony was admitted in direct contravention of the mandates of the rule. We thus find that the trial court abused its discretion in allowing the expert to testify. However, in light of our holding with respect to TXI's other points and because a retrial of the case would subject the parties to needless expense, we find the error, although reversible, would be cured by a remittitur of the excess filed by appellee. Tex.R.Civ.P. 439 and 440.

Appellee testified that his future lost earnings would amount to $588,962.40. In comparison, the expert testified as follows:

> What we do if we're talking about the total discounted present value to fully compensate in net terms the loss to him, the addition of these two accounts which would be to date of trial [$]63,459 in net terms. Then this total of 32 years and the 5 years in this kind of terms I put up here, which gives us a total of $805,481. This then would be the figure taking future expected increases and the portfolio of returns into account that I'll bet would fully compensate him for his injury and loss of job and earning power.

The jury awarded appellee $933,279 for loss of future earning capacity. A difference of $344,316.60 exists between these amounts. Accordingly, on condition of remittitur of $344,316.60 by appellee, the judgment as to TXI is reformed and as reformed, it is affirmed. Should appellee fail to file the remittitur, TXI's point of error 6 is sustained, the judgment is reversed, and the case remanded for a new trial. Tex.R.Civ.P. 440.

TXI alleges in its points of error 14 and 15 that a remittitur is required because the damages found were excessive and that a new trial was required because the award was tainted with prejudice. TXI's contentions are without merit. In *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573 (Tex. Civ.App.—Houston [14th Dist.] 1960, writ ref'd n.r.e.), we stated:

The evidence is to to be viewed most favorably to the award, and in the absence of a showing of passion, prejudice or other improper motive to influence the jury, or unless the verdict is so shockingly and grossly excessive as to indicate such passion and prejudice by reason of the size alone, the amount assessed by the jury will not be set aside. 430 S.W.2d at 578.

See *Allen v. Whisenhunt*, 603 S.W.2d 242 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd); *Green v. Hale*, 590 S.W.2d 231 (Tex.Civ.App.—Tyler 1979, no writ); *Adams v. Houston Lighting & Power Company*, 158 Tex. 551, 314 S.W.2d 826 (1958). Viewing the evidence most favorably to the award, we find that absent the amount of damages attributable to the expert's testimony, the award was not excessive. In addition, there was no evidence tending to show that the award was tainted with prejudice. Appellant's points of error 14 and 15 are overruled.

▪ In its point of error 16, TXI asserts that the trial court erred in rendering judgment based on the jury's separate award to appellee for past and future disfigurement as this finding allegedly provided appellee with a double recovery. It argues that disfigurement is an element of damage contained in mental anguish and/or physical impairment and disability. Appellant contends that submission of all three elements permitted appellee a double recovery. We disagree. The trial court submitted the following special instruction to the jury:

In answering the subdivisions of Special Issue No. 29 do not include any amount for any condition for which you have placed a figure in any other subdivision of Special Issue No. 29.

We held in *Green v. Baldree*, 497 S.W.2d 342 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ), that such an instruction to limit the jury's consideration to certain elements is proper. Finding no error in the submission of the elements, appellant's point of error 16 is overruled.

▪ Appellee brings forward two cross-points which we will discuss briefly. In its first cross-point, appellee asserts that the trial court erred in granting appellants' motions to disregard Special Issue Nos. 17, 18, 19 and 20, and in not granting judgment in appellee's favor based on the jury's answers thereto. These issues were submitted in support of appellee's claims based on the theory of strict liability. Appellee relies on Restatement (Second) of Torts § 402 A (1965) which states that a seller of a product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm caused to the user if the seller is engaged in the business of selling such a product and it is expected to and does reach the user without substantial change in the condition in which it is sold. This statement of strict liability has been adopted as the rule in Texas. *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1976).

In the instant case the beam was not defective in and of itself. Its "defect" manifested itself only in the lifting procedure. No action under principles of strict liability is thus tenable. Appellee's first cross-point is overruled.

▪ In its second cross-point, appellee complains of the trial court's refusal to allow him to file a post-verdict trial amendment increasing the damages to conform to the jury's verdict. During the voir dire examination of the jury panel, appellee agreed in open court to limit the damages sought by appellee to $2,000,000. The trial court has broad discretion in granting or denying leave to file a trial amendment. *Allen v. Whisenhunt, supra.* We find that the trial court did not abuse its discretion in this regard.

As to Texas Industries, Inc., it thus becomes the duty of this court to order that the case be reversed and remanded for a new trial unless within fifteen (15) days after date of this opinion, the appellee files a remittitur in the sum of $344,316.60.

Affirmed on condition of remittitur as to Texas Industries, Inc., and reversed and rendered as to Everman Corporation.

**760**

## OPINION AFTER ENTRY OF REMITTITUR

Appellee, Randall Wade Lucas, has filed and entered the remittitur of $344,316.60 as required by a former order of this court. He points out, however, that the $344,316.60 should be deducted from the total amount of the jury verdict of $2,104,039.10 instead of the $2,000,000 judgment ultimately entered by the trial court. As we held above in the opinion of this court, the trial court did not abuse its discretion in denying appellee leave to file a trial amendment after he agreed to limit the damages sought to $2,000,000. We hereby reaffirm that holding.

Affirmed as modified as to Texas Industries, Inc., and reversed and rendered as to Everman Corporation.