PERMA STONE COMPANY, T.G. Glispin and Victoria County Electric Cooperative, Appellants,

v.

Robert L. TEAKELL, Appellee.

No. 2550cv.

Court of Appeals of Texas, Corpus Christi.

Feb. 10, 1983.

Rehearing Denied March 17, 1983.

O.F. Jones, III, Edward J. Ganem, Victoria, for appellants.

Richard Warren Mithoff, Houston, Russell H. McMains and Edwards & Perry, Corpus Christi, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is an action sounding in negligence brought by appellee against appellants and others. In response to special issues, the jury found that various acts of appellee and appellants Perma Stone Company and T.G. Glispin (herein referred to collectively as "Perma Stone"), and appellant Victoria County Electric Cooperative Company (hereinafter "the Co-op") constituted negligence and proximate causes of appellee's injuries, and allocated fault as follows: Perma Stone 60%, the Co-op 30%, and appellee 10%. For the reason hereinafter stated, we reverse and remand.

The incident made the basis of this suit occurred on November 2, 1977, when appellee came into contact with a live, energized electrical line owned and operated by the Co-op. At the time, appellee was in the

employ of National Steel Products Company (hereinafter "National"). National was engaged in the erection of a metal building on the property of one Travis Vollmering[1] who had purchased the building from Perma Stone in its disassembled state. Perma Stone had purchased the building from National, and had contracted with National for its erection.

Appellee filed his worker's compensation claim and received benefits thereunder prior to filing the instant suit against appellants. Appellants filed their third-party actions against National seeking indemnity and contribution. National responded with its motion for summary judgment which was granted by the trial court.

The first points of error to be addressed will be those which, if sustained, would require a reversal and rendition of judgment, or a part thereof. In its second point of error, Perma Stone argues that there is no evidence that it owed any duty to appellee. It is axiomatic, of course, that liability cannot be predicated upon negligence[2] in the absence of a duty owed to the plaintiff by the defendant. 40 Tex.Jur.2d *Negligence*, § 5, p. 122–24 (and the numerous cases cited therein). In reviewing this (and other) "no evidence" points, we will follow the now familiar standard of review as set out in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ Perma Stone initially contends that, as per its contract with National, its only obligation to National (and, hence, National's employees) was to prepare the foundation for the building. This stance indicates a somewhat selective reading of that instrument, which is in evidence and clearly states in Subsections B and F that Perma

Stone was to furnish National's employees "a safe place in which to work...." The requisite duty to maintaining an action in tort may be created by contract, *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947), and we find the terms of the Perma Stone/National contract referred to above to be evidence of such.

Perma Stone next asserts that it owed no duty to appellee to have the lines de-energized or relocated as a matter of law. In support of this, we are cited to Tex.Rev.Civ. Stat.Ann. Art. 1436c, Sec. 6,[3] wherein it is provided:

"When any person, firm or corporation desires to temporarily carry on any function, activity, work or operation in closer proximity to any high voltage overhead line than permitted by this Act, *the person or persons responsible for the work to be done shall promptly notify the operator of the high voltage line.*" (Vernon's 1980) (Emphasis supplied.)

It is Perma Stone's position that it was National that was "responsible for the work to be done." This argument is without merit.

■ The jury was given an instruction concerning the requirements of Art. 1436c, Sec. 6. No objections were made thereto, or instructions requested, to the effect that such language is inapplicable to Perma Stone. Therefore, any complaint concerning the jury's application of it has been waived on appeal. Tex.R.Civ.P.Ann., Rule 274 (Vernon's 1976). Perma Stone's point of error number two is overruled.

We next turn our attention to the Co-op's contention that it owed no duty[4] to appel-

---

1. Mr. Vollmering was a defendant in the trial court, but was found to be free of any fault, and is not a party to this appeal.

2. Those omissions of Perma Stone found by the jury to be negligence were its: (1) failure to notify the Co-op in time to have the lines in question de-energized; (2) failure to notify the Co-op in time to have the lines relocated; (3) failure to notify Mr. and Mrs. Vollmering or National that the lines would not be de-energized or relocated by November 1, 1977, as requested; and (4) failure to provide appellee

with a safe place in which to work. All of these were found to be proximate causes of appellee's injuries.

3. Article 1436c is entitled:

"Safety of persons engaged in activities in proximity of high voltage electric lines; restrictions."

4. The omission on the part of the Co-op found by the jury to constitute negligence and a proximate cause of appellee's injuries was its failure

lee. We will preface our discussion with a recitation of the facts as they apply to these points of error.

Mr. Eugene Roland, who was the Co-op's Line Superintendent at the time of the accident, and Mr. Kenneth Heinold, who was employed by the Co-op in its service department at that time, testified. Their testimony shows that in November, 1977, Mr. Heinold's duty as dispatcher was to field incoming calls concerning service or assistance, and to either dispatch a crew by radio, or fill out a "job order" and place it in a basket for a crew to take care of later. Such a job order was filled out by Mr. Heinold concerning the Vollmering property on November 1st, although Mr. Heinold could not recollect on what date, or at what time of day, he had actually received the call.

He did, however, remember having received such a call, the gist of the message of which was that there was building in process on the Vollmering property which would be close to the lines, and a request was made by the caller to have someone from the Co-op come and "check it out." (Mr. Heinold did not know who the caller was, but recalled that it was a woman, and recalled assuming that it was Mrs. Vollmering.) He knew from the caller that the building was "close" to the lines, but did not know how close. (Nor, apparently, did he inquire.)

Mr. Heinold further stated that if told by a caller that work was being done under live lines, and a request was made to have something done about it, it would be a matter of "some concern" to him, and would be given priority. If the caller indicated that the activity was getting close to the lines, then the "proper and safe thing to do" would be to send a service crew out to the property as soon as possible. He recalled, in this instance, assuring the caller that he would have someone there as soon as possible. He did not dispatch a service crew by radio.

Much of Mr. Roland's testimony emphasized that of Mr. Heinold, especially those portions concerning proper procedures. If the incoming call indicates a matter of "some urgency" or "some concern," the dispatcher should send out a crew as soon as possible, and not wait around for 24 or 48 hours. If information comes to the attention of the dispatcher which indicates that there is building going on underneath a line and that the line is close to the work or construction, and a request is made that someone come out, such would indicate "some urgency." Mr. Roland unequivocally stated that when such is the case, the Co-op has a duty to send a crew out as soon as possible, and failure to do so would be a breach of that duty.

Both witnesses testified that road crews were available on November 1, 1977, and could have been dispatched to the Vollmerings by radio. It would have taken them approximately one half hour to two hours to get there, and fifteen minutes to accomplish a temporary disconnect.

The Co-op's contention that no duty was owed appellee is twofold: (1) no evidence of common-law duty and, (2) no duty as a matter of law. The latter is predicated upon Art. 1436c, Sec. 6.

■ As regards the Co-op's common-law duty, it is asserted that since appellee admitted to having worked around electric lines previously, and being aware of the danger involved, there existed no duty on the part of the Co-op. See *Coleman v. Hudson Gas & Oil Corp.*, 455 S.W.2d 701, 702 (Tex.1970); *Montez v. Bailey County Electric Cooperative*, 397 S.W.2d 108, 112 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.). This argument is apparently an attempt on the Co-op's part to apply the "open and obvious" and volenti non fit injuria defenses. Each is a dead letter. See *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex.1978) (abolishing the open and obvious defense); *Farley v. M M Cattle Co.*,

to timely notify Mr. and Mrs. Vollmering or National that the lines in question would not be

de-energized on November 1, 1977.

529 S.W.2d 751, 758 (Tex.1975) (abolishing the volenti doctrine).

Nor do we find merit in the Co-op's contention that "[i]t is further undisputed that the defendant [Co-op] had absolutely no notice of the intention or actual commencement of construction of the building . . . [other than] the mysterious telephone call . . .," and that no duty was owed to appellee, whom it is claimed, was a mere licensee as to the Co-op. See *Houston Lighting & Power Co. v. Brooks,* 161 Tex. 32, 336 S.W.2d 603 (1960). The Co-op takes the position that the question of duty in the case at bar is directly governed by *Brooks.* We find the two readily distinguishable.

■ First is the issue of notice. In *Brooks* the court held that there was no evidence of any request having been made of the power company to de-energize or otherwise protect the lines. 336 S.W.2d at 605. In the instant case, the testimony of the two representatives of the Co-op presents adequate evidence of such a request and, hence, notice of the activity imparted to this defendant.

■ Additionally, we find inapplicable the holding in *Brooks* that "whatever duty is owed respondent by petitioner is as a member of the public [i.e., licensee] and not as . . . an invitee. . . ." Id. In *Brooks* there was no evidence recited that the injured plaintiff was working on property on which the defendant power company owned an easement or right of way. Rather, that opinion refers to power lines running near and parallel to the area where the plaintiff was working when injured. In the case now before us, assuming, as the Co-op urges us to do, that it was operating its lines on an easement or right of way on the Vollmering property, appellee, who was undisputedly an invitee of the Vollmerings, assumes the same relationship with the Co-op as holder of the easement. *Howard v. Jackson Electric Cooperative, Inc.,* 430 S.W.2d 689, 691 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.); *Montez v. Bailey County Electric Cooperative,* supra, 397 S.W.2d at 110.

We reject these contentions, and hold that there was evidence to establish a common-law duty owed to appellee on the part of the Co-op.

Similarly, we are unimpressed with the stance adopted by the Co-op that Art. 1436c, Sec. 6 relieved it of any duty as a matter of law. The specific language relied upon in support of this is the last sentence of that portion of that act:

"The operator of the lines shall be given not less than 48 hours advance notice to arrange for such temporary clearances."

It is the position taken by the Co-op that such manifests an intent on the part of the Legislature to absolutely forestall the onset of a duty to act on its part for 48 hours, regardless of the circumstances surrounding the request for temporary clearance, and despite the admission on the part of its employee, Mr. Roland, that a duty to act as soon as possible arises. We cannot agree.

■ We know of no reason for holding that the purpose of the Legislature in enacting Section 6 was to give the Co-op some advantage in this type of case which it did not enjoy at common law. *Ringo v. Gulf Utilities Co.,* 569 S.W.2d 31, 35 (Tex.Civ. App.—Beaumont 1978, writ ref'd n.r.e.). We view that part of Section 6 as the imposition of a statutory obligation upon the party requesting the temporary clearance, rather than the release of the power company from a duty to protect those whom it has reason to know may be exposed to the dangerous instrumentalities under its control.

Moreover, Art. 1436c goes on to provide, in Section 7(a) and (b), penalties for the violation by the one seeking the temporary clearance of that obligation, including the right on the part of the power company to be indemnified for all liability incurred by it as a result of injuries occasioned by the violation. The Co-op's points of error numbers one, two, three, seven, eight and eleven are overruled.

■ We now move to the appellants' points of error which attack the findings of negligence and proximate cause. In its third point of error, Perma Stone contends

that the verdict is contrary to the evidence because, as a matter of law, the sole proximate cause of appellee's injuries was the negligence of appellee and/or his employer National. Assuming, for the moment, the existence of negligence on the part of National, we fail to see how its negligence, combined with the separate negligent acts of appellee, could fall within the doctrine of *sole* proximate cause. There can be only one sole proximate cause of an injury. *Pride of Dallas Taxicab Co. v. Lawrence*, 277 S.W.2d 169, 172 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.). As concerns Perma Stone's contention regarding the negligence of appellee alone, it is now well established that the issue of sole proximate cause of an injury, as distinguished from proximate cause, simply does not arise, and is not available to the defendant, when the suit is between the injured party and the party inflicting the injury; rather, it arises only where it is claimed that the act of a third party or an extraneous event was a proximate cause. *Atchison, Topeka & Santa Fe Ry. Co. v. Ham*, 454 S.W.2d 451, 455 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.); *Dallas Transit Co. v. Tolbert*, 337 S.W.2d 617, 621 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.); *Panhandle & Santa Fe Ry. Co. v. Ray*, 221 S.W.2d 936, 941 (Tex.Civ.App.—Austin 1949, writ ref'd n.r.e.).

■ The allegation regarding sole proximate cause of National presents a different picture in that special issues inquiring as to its potential negligence were requested and refused. This act of the trial court will be discussed further on. Suffice it to say for our present purposes that the evidence is sufficient to establish a breach of Perma Stone's duty, as well as to support the jury's comparative negligence findings. Perma Stone's points of error numbers three and four are overruled.

■ The Co-op's third and fourth points of error also challenge the legal and factual sufficiency of the evidence supporting the findings of negligence and proximate cause. We have already reviewed the testimony of the Co-op's employees, Roland

and Heinold. The standard of care owed by a defendant may be established by that party's own testimony. *Wilson v. Scott*, 412 S.W.2d 299, 303 (Tex.1967); *Smith v. Guthrie*, 557 S.W.2d 163, 165 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). We hold that the testimony previously detailed is evidence to establish a breach of the Co-op's duty and to support the finding that such was a proximate cause of appellee's injuries. The Co-op's points of error numbers three and four are overruled.

■ Likewise, our discussion thus far of the testimony of Roland, Heinold and the appellee is dispositive of the Co-op's sixth point of error in which the legal and factual sufficiency of the evidence supporting the jury's apportionment of fault is attacked. This point is overruled as well.

It is the trial court's action in granting National's motion for summary judgment which forms the basis of Perma Stone's first and the Co-op's ninth points of error. It need be noted initially that, under the facts of this case, Article 8306, § 3 of our Revised Civil Statutes, (the applicable portion of our Workers' Compensation Statute,) immunizes National from claims for indemnity and contribution absent an express contractual provision to the contrary. *Superior Commercial Carpet Service, Inc. v. American Chain & Cable Co.*, 623 S.W.2d 747, 749 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Grove Mfg. Co. v. Cardinal Construction Co.*, 534 S.W.2d 153, 155 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). It is nonetheless Perma Stone's contention that National was a necessary party to the suit, and that the other defendants were highly prejudiced by its absence in that a finding could have been reached that acts of National were in part responsible for appellee's injuries.

■ If the purpose of a finding of National's negligence was simply to determine the extent of the liability of the remaining defendants, then National's presence as a party to the suit was not required. *Deal v. Madison*, 576 S.W.2d 409, 415 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). In a recent

case which is factually analogous to the one at bar, it was held that the trial court did not err in granting the plaintiff's employer, situated as was National, summary judgment. *Superior Commercial Carpet Service, Inc. v. American Chain & Cable Co.,* supra, 623 S.W.2d at 750. We reach the same conclusion, and overrule Perma Stone's first point of error insofar as it complains of this action by the trial court.

In the Co-op's ninth point of error complaint is also made of the summary judgment granted National. The Co-op's basis, however, is that Article 1436c, Sec. 7(b)[5] provides for statutory indemnity over and against National.

We need not address the merits of this contention. Summary judgment proceedings are governed by Rule 166–A of our Rules of Civil Procedure, wherein it says:

> "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Id., subsection (c) (Vernon's Supp.1982).

In construing this language, our Supreme Court has held that:

> "The word 'written' modifies not only the word 'motion,' but also the words 'answer' and 'other response.' The 'issues' required by the rule to be 'expressly presented' are those pointed out to the trial court in written motions, written answers or written responses to the motion [for summary judgment]. The term 'answer' in the context of the rule refers to an answer to the motion, not an answer generally filed in response to a petition." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex.1979).

The Co-op failed to file any response to National's motion for summary judgment, and cannot, therefore, be heard to urge this point on appeal. Nor do the Co-op's pleadings against National reflect relief sought on the basis of Section 7(b). The Co-op's ninth point of error is overruled.

In its fifth point of error, Perma Stone attacks the sufficiency of the evidence to support the jury's findings regarding damages. However, the point is not briefed, and we therefore consider it waived. Rule 418, Tex.R.Civ.P.; *County of Nueces v. Floyd,* 609 S.W.2d 271, 274 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

We address ourselves finally to the trial court's refusal to submit special issues inquiring as to the existence of negligence on the part of National in failing to: (1) arrange to have the power lines relocated; (2) arrange to have the line de-energized; and, (3) timely notify appellee that the line had not been de-energized. Also requested and refused were accompanying proximate cause and comparative negligence issues. This action on the part of the lower court is raised in Perma Stone's first and the Co-op's tenth points of error. No objection was made to these issues by appellee. We agree with appellants that the refusal to submit the requested issues constitutes reversible error.

The absence of a settling party as defendant should not preclude the submission of issues concerning the existence and amount of its negligence. *Deal v. Madison,* supra, 576 S.W.2d at 416; Keeton, *Annual Survey of Texas Law: Torts,* 28 Sw.L.J. 1, 14 (1974). Any resultant finding of negligence would not be binding upon the absent party, but could be instrumental in determining the extent of liability of the remaining defendants. *Deal v. Madison,* supra, at 415.

It is readily apparent that the trial court's refusal of these issues was calculated to and probably did cause the rendition of an improper verdict. Rule 434, Tex.R.

---

**5.** Section 7(b) provides:

"If a violation of this Act results in physical or electrical contact with any high voltage overhead line, the person, firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for all damage to such facilities and for all liability incurred by such owner or operator *as a result of any such* contact." (Vernon 1980).

Civ.P. Accordingly, we REVERSE the judgment and REMAND the cause for a new trial.

## OPINION ON MOTION FOR REHEARING

KENNEDY, Justice.

We think the argument made by appellee in his motion for rehearing, and the case law in support thereof, to be worthy of discussion. The appellee predicates his argument on *Texas Industries, Inc. v. Lucas,* 634 S.W.2d 748 (Tex.App.—Houston [14th Dist.] 1982, no writ), a case factually analogous to the one at bar. In *Lucas* the plaintiff had received workers' compensation benefits from the insurance carrier of his employer, Precast Erectors, Inc., for injuries received in a construction related accident, and subsequently brought suit sounding in negligence against two other subcontractors, TXI Structural Products, Inc., and Everman Corporation. In response to special issues the jury apportioned fault as follows: TXI 73%, Everman 9%, and Precast 18%. The trial court then disregarded the jury's findings concerning the fault of the employer, Precast, and assigned one third of that percentage (or an additional 6%) to Everman, and two thirds (or an additional 12%) to TXI.[6] Thus, the final judgment apportioned fault 85% to TXI and 15% to Everman.

The Court of Appeals held that the trial court did not err in disregarding the jury's findings. In so doing the Court noted the decision in *Deal v. Madison,* 576 S.W.2d 409, and then distinguished that case.

"However, we disagree that the employer is like a 'settled' joint tortfeasor. A settlement is an agreement by which parties reach an understanding in compromise of disputed matters. [Citation omitted.] It necessarily follows that only those matters for which a party has a cause of action against another are disputed. If that were not the case, no reason for entering into a settlement agreement would exist.

A party is barred from seeking contribution and indemnity from a party against whom the injured party has no cause of action. [Citation omitted.] If appellee's cause of action against Precast is precluded by Art. 8306 § 3, then it defies reason to suggest that Precast is a 'settled' tortfeasor.

This issue is one of first impression as appellants do not seek contribution and indemnity from Precast but only a consideration of the jury's findings so that a percentage attributable to Precast's negligence may be deducted from the amount they will have to pay. However, we base our decision for this point of error on the policies espoused in *General Elevator Corp. v. Champion Papers,* 590 S.W.2d 763 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) and *Superior Commercial Carpet Service v. American Chain and Cable Co.,* 623 S.W.2d 747 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ)." 634 S.W.2d at 756–57.

It stands to reason, of course, that if the trial court is free to disregard such findings and simply reapportion that percentage of the injuries found to be attributable to the employer, then the issue of the employer's negligence should never be submitted in the first place. With all respect to our learned colleagues who fashioned *Lucas,* we are unable to agree with their conclusions, and decline to follow that case.

 While an injured employee of a subscribing employer who has opted to receive benefits under workers' compensation is barred from pursuing a common-law negligence action against his employer, such is the case because the two have *elected* to settle disputes concerning compensation for employment related injuries in the manner prescribed by the Workers' Compensation Statutes. *Cohn v. Spinks Industries, Inc.,*

---

**6.** The means by which the trial court arrived at this solution to the problem of reassignment of Precast's percentage of fault once the decision had been made to disregard the jury's findings is not known.

**492**

602 S.W.2d 102, 103 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). If the employee has complied with the appropriate statutory notice provisions, he may forego workers' compensation benefits and proceed against his employer under common-law theories of recovery. Tex.Rev.Civ.Stat.Ann. Art. 8306, Sec. 3a (Vernon's 1967). We cannot agree with the holding in *Lucas* that a distinction exists between a settling tortfeasor and a subscribing employer who is insulated from further legal actions, solely for purposes of determining the extent of negligence of the remaining defendants. Each has bought his peace with the injured plaintiff. The potential inequities in holding otherwise are all too apparent.

In a case such as the one at bar, the remaining defendants would be liable for 100% of the plaintiff's damages despite the fact that the evidence raises the possibility that they were not 100% at fault for his injuries. Thus, the plaintiff is enabled to recover twice for at least a portion of his damages, while the remaining defendants have no legal recourse against the employer. The facts and result in *Lucas* bear this out. In reviewing that case, we cannot help but consider how inequitable the Court's holding would be were the figures in the comparative negligence issue changed. Suppose, for example, that the jury had found the negligence of TXI and Everman each to be 5% to blame, and deemed that of Precast to be 90%. Disregarding the jury's findings and laying the entire liability at the door of the remaining defendants with no available claim for indemnity would be unconscionable.

Additionally, we do not agree with the reliance had in *Lucas* upon *Superior Commercial Carpet Service v. American Chain and Cable Co.,* supra. In *Superior* the issue was whether it was necessary to join the employer as a party defendant in order to have its percentage of negligence determined, even though the remaining defendant admitted that it had no claim against it for indemnity and contribution. The Court held that the employer's presence as a party defendant was not necessary, and that the trial court was correct in granting the employer's motion for summary judgment. 623 S.W.2d at 750. The Court indicated in dicta, however, that in order for the jury to be provided with all of the facts it may be acceptable for the defending tortfeasor to make reference to and obtain instructions regarding the negligence of the non-party as the possible cause of the injury in question. Id.

Appellee's motion for rehearing is overruled.